**Kenneth POPE and Judie Pope, Appellants–Plaintiffs,**

v.

**HANCOCK COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION d/b/a Central Indiana Power, Appellee–Defendant.**

**No. 30A05–1001–CT–3.**

Court of Appeals of Indiana.

Dec. 2, 2010.

Thomas E.Q. Williams, Greenfield, IN, Attorney for Appellants.

Kent M. Frandsen, Timothy L. Karns, Parr Richey Obremsky Frandsen & Patterson LLP, Lebanon, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Kenneth Pope ("Kenneth") and Judie Pope ("Judie") (collectively, "the Popes") appeal the trial court's order granting Central Indiana Power's ("CIP") motion for judgment on the evidence. The Popes raise two issues, which we consolidate and restate as: whether the trial court abused its discretion when it entered judgment on the evidence in favor of CIP at the close of the Popes' case in chief.

We affirm.

## FACTS AND PROCEDURAL HISTORY

For thirty-seven years, the Popes have lived on a farm located in rural Greenfield, Hancock County, Indiana. Since 1983, CIP has provided electrical service to the Pope property. In order for electrical service to reach the Popes' property, utility poles and electrical lines were placed along the county road and down the lane leading to the Popes' property. At least one of the electrical lines ran through the limbs of some trees located along the lane to the Popes' property and crossed the driveway.

Since 2002, Kenneth has required dialysis treatments three days a week to combat his renal failure. In order to get to his dialysis treatments, an ambulance service would transport him from his home to a clinic in Greenfield for a 6:00 a.m. appointment on Mondays, Wednesdays, and Fridays. Because the ambulance service usually arrived between 5:15 a.m. and 5:25 a.m. to transport Kenneth, Judie would wake him up at approximately 4:15 a.m. on the dates of his dialysis treatments.

In the late night hours of May 30 and the early morning hours of May 31, 2008, a severe storm with straight line winds swept across Hancock County causing extensive damage to trees and power lines in the area. As a result of the storm, power was out along the county roads near the Popes' property. Additionally, limbs fell from trees along the lane leading to the Popes' home causing the power line to break and fall across the Popes' walkway and driveway. The Popes were without power from May 30 until the early afternoon of June 3, 2008.

Beginning on June 1, and continuing until June 3, Judie made telephone calls to CIP and its after-hours answering service reporting the power outage and the downed power line in the walkway and driveway. She also indicated that Kenneth was a dialysis patient who needed to be able to leave for his dialysis treatments during the coming week. She was informed that, as a result of the storm, there were many poles down in the area and many people were without power and that the crews were working to restore power as quickly as possible. CIP did not make any promises of a specific restoration time.

During the time that the power was out, several friends and neighbors of the Popes came to their home. Although the county roads in the area around the Popes' property contained debris from the storm, each of the visitors was able to access the Popes' property. While there, the visitors spent time cleaning up tree limbs and other debris located on the Popes' property after the storm. During this time, neither Kenneth nor Judie asked to stay at the homes of one of their friends or neighbors until the power could be restored to their property. Nor did they ask for any assistance in getting Kenneth to his dialysis appointments.

On Monday, June 2, 2008, the ambulance arrived to pick up Kenneth for his regular dialysis appointment, but the driver could not access the back door of the Popes' home because of the power line across the sidewalk. The driver was therefore unable to get Kenneth into the ambulance and did not take him to dialysis. On Tuesday, June 3, the ambulance service was scheduled to attempt to again pick up Kenneth for his treatment. At approximately 4:15 a.m. on that morning, Judie woke up Kenneth to begin the process of getting him ready for his appointment. It was not yet light outside, and because the electrici-

ty was still out, there were no lights working in the home. Judie was able to use a flashlight to move Kenneth from his bedroom to the back porch where the ambulance would pick him up. After Kenneth was situated on the back porch, Judie left him and went to another room in the house. While waiting for the ambulance, Kenneth proceeded to move around on the back porch without a flashlight and tripped over his wheelchair causing him to fall. As a result, he sustained a fractured hip, for which he was required to undergo surgery.

On June 24, 2008, the Popes filed a complaint against CIP, alleging that, because of CIP's failure to timely restore power to their home following the storm and because of CIP's failure to keep the trees trimmed near the power lines, Kenneth was injured when he fell in his dark and still powerless home in the early morning hours of June 3, 2008. Kenneth sought damages for his injuries, and Judie sought damages for loss of consortium. On November 9, 2009, a jury trial was held. At the close of the Popes' case-in-chief, CIP moved for judgment on the evidence. The trial court granted the motion and ruled that the Popes had failed to produce sufficient evidence that CIP had negligently maintained the power lines providing electricity to the Popes' residence or that CIP was negligent in its restoration of power to the Popes' residence. Judgment was entered in favor of CIP. The Popes now appeal.

## DISCUSSION AND DECISION

The granting of a motion for judgment on the evidence is a matter committed to the sound discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Lightning Litho, Inc. v. Danka Indus., Inc.,* 776 N.E.2d 1238, 1240 (Ind.Ct.App.2002), *trans. denied*

(2003). On appeal, we employ the same standard as the trial court. *Swan Lake Holdings, LLC v. Hiles*, 888 N.E.2d 265, 269 (Ind.Ct.App.2008). We consider the evidence in the light most favorable to the non-moving party. *Id.* Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Id.* "In other words, we 'must determine whether there was evidence of probative value supporting each element which would justify submission of the claim to the jury.'" *Id.* (quoting *S.E. Johnson Cos. v. Jack*, 752 N.E.2d 72, 78 (Ind.Ct.App.2001)).

> Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper.

*Sipes v. Osmose Wood Preserving Co. of Am.*, 546 N.E.2d 1223, 1224 (Ind.1989) (quoting *Jones v. Gleim*, 468 N.E.2d 205, 206–07 (Ind.1984)).

The Popes argue that the trial court abused its discretion when it granted CIP's motion for judgment on the evidence after the Popes had presented their case in chief. They contend that this was error because they presented sufficient evidence to show that CIP was negligent in its failure to maintain the power lines that run to their house from possible interruption because of untrimmed trees and that it was foreseeable that the lack of electric service would be a special problem to a person with special needs like Kenneth.

They also claim that sufficient evidence was presented to show that CIP was negligent in its failure to restore power to the Popes' residence in a timely manner because if the lines had been repaired promptly, Kenneth would not have been getting ready in the darkness on June 3, 2008.

 To recover under a theory of negligence, a plaintiff must establish: (1) a duty on the part of the defendant to conform to a standard of care arising from its relationship with the plaintiff; (2) a failure on the part of the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Patterson v. Seavoy*, 822 N.E.2d 206, 211 (Ind.Ct.App. 2005). Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 515 (Ind.Ct. App.2005), *trans. denied* (2006). Whether the defendant owed the plaintiff a duty is a pure question of law for the court to decide. *Briesacher v. Specialized Restoration & Constr., Inc.*, 888 N.E.2d 188, 192 (Ind.Ct.App.2008). "'The duty, when found to exist, is the duty to exercise reasonable care under the circumstances.'" *Carter*, 837 N.E.2d at 515 (quoting *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 402 (Ind.Ct.App.1992), *trans. denied* (1993)); *see also Pilkington v. Hendricks County Rural Elec. Membership Corp.*, 460 N.E.2d 1000, 1005 (Ind.Ct.App. 1984) ("In Indiana, the standard of care required of companies transmitting electricity is the care a person of reasonable prudence would ordinarily use under like conditions or circumstances.").

 Although "[t]he duty never changes ..., the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." *Carter*, 837 N.E.2d at 515.

Therefore, the plaintiff in a negligence action bears the burden of establishing a standard of conduct as well as a deviation from that standard. *Cox v. Paul,* 828 N.E.2d 907, 912 (Ind.2005). " 'Whether a particular act or omission is a breach of duty is generally a question of fact for the jury.' " *Briesacher,* 888 N.E.2d at 194 (quoting *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind.2003)). However, " '[i]t can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts.' " *Id.* (quoting *Sharp,* 790 N.E.2d at 466).

■ Here, the Popes were required to present evidence that CIP deviated from the requisite standard of care either in maintaining its power lines or in not restoring power to the Popes' residence for over three days. The Popes presented evidence that CIP had supplied them with electrical service since 1983, and that, late on May 30, 2008, a severe storm with straight line winds swept through the area, causing extensive damage to trees and power lines. As a result of the storm, power was out along the road near the Popes' home. Downed limbs from trees near their house also caused a power line to break, and the downed power line fell across the Popes' driveway and walkway. The power was not restored to the Popes' home until the afternoon of June 3, 2008. Prior to the power outage, the Popes had not filed a request for emergency service consideration with CIP.

We conclude that the Popes produced no evidence to establish a standard of care by which CIP should have worked to restore electrical service to its customers in the aftermath of a storm of this severity and a breach of such standard of care. No evidence was presented as to the standard of care for electrical utilities to restore power after such a devastating storm. The conditions and circumstances here were that a severe storm had struck the area, and there was widespread damage to the power lines and many people were without power. The Popes did not establish that CIP acted below a minimum standard of care in its restoration of power to their residence.

■ Nor did the Popes produce any evidence from which a reasonable jury could conclude that CIP deviated from a requisite standard of conduct in the maintenance of its electrical lines. No evidence was presented to establish a standard of care applicable to the trimming of trees by electrical utilities. The record was devoid of any evidence as to knowledge by CIP of the actual circumstances regarding the power lines being within the tree limbs prior to the power outage. A utility's duty to exercise reasonable care does not contemplate constant surveillance. *Pilkington,* 460 N.E.2d at 1007. Absent knowledge or notice of a hazard affecting an electric utility's lines, no liability exists. *Id.* at 1006. As the Popes failed to introduce any evidence that CIP knew that tree branches had become intermingled with the power lines on the Popes' property, the trial court did not abuse its discretion when it granted CIP's motion for judgment on the evidence.

■ Further, even if a duty and breach were established, the Popes did not present evidence to establish that Kenneth's injuries were proximately caused by CIP's actions. A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence, which in light of the circumstances, should have been foreseen or anticipated. *Florio v. Tilley,* 875 N.E.2d 253, 255 (Ind.Ct.App. 2007). "At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct." *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1054 (Ind.2003). Liability

may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission. *Id.* Although proximate cause is generally a question of fact to be determined by the jury, it becomes a question of law when the relevant facts are undisputed and lead to only a single inference or conclusion. *Scott v. Retz,* 916 N.E.2d 252, 258 (Ind.Ct.App.2009).

The Popes failed to present evidence to establish that CIP could have reasonably foreseen that Kenneth would trip over his wheelchair while getting ready in the dark. While it may have been a natural and probable consequence of a downed power line that a person could come in contact with the line and become injured, we do not believe that the same can be said of a person being injured while walking around their house in the dark. This is especially true when Kenneth chose to move around in the dark without the assistance of a flashlight. We therefore conclude that CIP's actions were not the proximate cause of Kenneth's injuries, and the trial court did not abuse its discretion in granting CIP's motion for judgment on the evidence.

Affirmed.

RILEY, J., and BAILEY, J., concur.