# FOR PUBLICATION



FILED

Jun 07 2013, 8:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GARY M. SELIG, P.C.**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**J. DAVID HOLLINGSWORTH**
**BRENT R. BORG**
Church, Church, Hittle & Antrim
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GAYLE FISCHER,                       )
                                     )
   Appellant,                        )
                                     )
        vs.                    )       No. 49A02-1204-PL-340
                                     )
MICHAEL and NOEL HEYMANN,            )
                                     )
   Appellees.                        )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-0605-PL-19166

**June 7, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE[1]

Gayle Fischer brings this interlocutory appeal from the trial court's judgment against Michael and Noel Heymann for $93,972.18 in damages on her breach-of-contract claim. Fischer requests that we vacate the trial court's findings and conclusions on her failure to mitigate and remand with instructions to award actual and consequential damages in the amount of $286,409.43. On cross-appeal, the Heymanns assert that the trial court's specific findings required the court to enter a damage award of $117 for Fischer. We consolidate the parties' arguments and consider the following two issues:

1.      Whether the trial court's findings that Fischer would not have been damaged had she agreed to make the repairs identified in the inspection report on or before February 18, 2006, means that Fischer failed in her duty to mitigate her damages; and

2.      Whether the trial court abused its discretion when it limited Fischer's award for attorney's fees and court costs in accordance with her failure to mitigate her damages.

We hold that the Heymanns committed an anticipatory breach of the purchase agreement on February 10, 2006; that, given the evidence and the trial court's findings, Fischer's duty to mitigate arose on February 11, 2006, when she learned of the Heymanns' breach; and that Fischer failed to act with reasonable diligence to mitigate her damages at her first opportunity, which was no later than February 18, 2006. We also hold that the trial court acted within its discretion when it limited Fischer's award for attorney's fees and costs. Based on the undisputed evidence and the trial court's finding that Fischer would have incurred virtually no damages had she taken reasonable steps to mitigate on or before February 18, 2006, we reverse the trial court's judgment on

---

[1] We held oral argument in this matter on March 6, 2013.

damages and remand with instructions that the trial court amend Fischer's damage award to $117, reasonable attorney's fees commensurate with that award, and court costs.

## FACTS AND PROCEDURAL HISTORY

On February 4, 2006, the Heymanns entered into a purchase agreement to purchase a condominium (the "Property") at the One West Horizontal Property Regime ("One West") in Indianapolis from Fischer for $315,000, with a closing date of May 31, 2006. The Heymanns agreed to pay cash for the Property. They paid $5,000 in earnest money and, pursuant to paragraph 13 of the agreement, they had the right to terminate the agreement if, upon inspection, the Heymanns

> reasonably believe[d] that the Inspection Report reveal[ed] a MAJOR DEFECT with the Property and [Fischer wa]s unable or unwilling to remedy the defect . . . . 'Defect' means a condition that would have a significant adverse effect on the value of the Property that would significantly impair the health or safety of future occupants . . . or . . . would significantly shorten or adversely affect the expected normal life of the premises.

Fischer v. Heymann, 943 N.E.2d 896, 898 (Ind. Ct. App. 2011) (citation omitted), trans. denied ("Fischer I"). On February 6, the Heymanns timely exercised their right to have the Property independently inspected for defects pursuant to paragraph 13.

The Heymanns hired an inspection company. The company inspected the Property and submitted its report to the Heymanns. In relevant part, the inspection report noted as a "Major Concern[]" that "[t]here is no electrical power to the outlets in the half bathroom and second floor bathroom and exterior outlet on the balcony." Id. at 899 (quotations omitted). The inspection report further stated that the "light over the sink in the half bathroom did not light properly." Defs. Trial Exh. X at 12.

3

On February 10, the Heymanns submitted to Fischer a "Buyer's Inspection Response" (the "February 10 demand") in which they agreed to accept the property if Fischer resolved the following: "Electrical power to the outlets in the half bathroom and second floor bedroom and exterior balcony. Light over half bath sink does not work properly (probably bulb replacement)." Id. (quotations omitted). The Heymanns reserved the right to inspect the property again prior to closing, but they demanded that Fischer respond by February 13. Fischer responded on February 13 with an Amendment to Purchase Agreement, on which she checked a box that read "[t]he time for making any responses to inspections is extended to" and wrote in "February 28, 2006." Id. (quotations omitted). On February 15, the Heymanns responded with their own Amendment to Purchase Agreement, in which they checked a box that read: "The time for making any responses to inspections is extended to February 18, 2006" (the "February 15 demand"). Appellant's Addendum to Brief at 25.[2] While paragraph 13 of the purchase agreement did not require that Fischer respond to the Heymanns' conditions, paragraph 18 stated: "Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase Agreement are calendar days and shall expire at midnight of the date stated unless the parties agree in writing to a different date and/or time." Id. at 19.

---

[2] Nothing in the Appellant's Addendum to Brief, which consists exclusively of trial exhibits, justifies their binding and filing together in a submission separate from the Appellant's Appendix. Pursuant to our appellate rules, "short excerpts from the Record on Appeal . . . such as essential portions of a contract . . . that are important to a consideration of the issues raised on appeal" are to be included in the Appendix. Ind. Appellate Rule 50(A)(2)(g).

On February 17, the Heymanns prepared an offer on a different condominium unit at One West and executed a mutual release from their purchase agreement with Fischer. But the Heymanns instructed their agents not to deliver the offer or the release until February 19 and only in the event that Fischer did not respond to their demand for repairs by the February 18 deadline. See Fischer I, 943 N.E.2d at 899. As Mr. Heymann later testified, "had [there] been a response by [Fischer] by the 18th . . . this piece of paper [the offer on the second condominium] . . . would have gone in the wastebasket. It was always on the basis of if there continued to be no response." Trial Transcript at 33.[3]

After Fischer did not respond to the Heymanns' demand for repairs by February 18, on February 19 the Heymanns' agents tendered the mutual release to Fischer, which she refused to sign. Fischer's electrician later resolved the electrical problems by pushing the ground fault interrupter ("GFI") reset button on the face of the wall outlets, and Fischer replaced a light bulb. Fischer's total cost to fix the electrical problems was $117.

On May 9, Fischer sued the Heymanns for specific performance or, in the alternative, damages. The Heymanns answered and raised a third-party indemnity claim against their agents. The trial court found for the Heymanns and against Fischer after a bench trial, but, on appeal, we reversed. In particular, we concluded:

> The substantive findings in the inspection report do not support an objectively reasonable belief that the defect was major. The report indicates there was no electrical power to three outlets, which could be and in fact was easily repaired. Therefore, under an objective standard, this would not have a significant adverse effect on the property's value or significantly impair the health or safety of occupants.

---

[3] The "Trial Transcript" refers to the transcript from the February 2010 trial on the question of the Heymanns' breach of the contract.

Fischer I, 943 N.E.2d at 901.[4]  Accordingly, we held that "the Heymanns' attempted termination of the purchase agreement with Fischer was ineffective," and we remanded to the trial court with instructions that it "determine the extent of damages the Heymanns owe Fischer," including Fischer's reasonable attorney's fees and court costs.  Id. at 903.

On remand, the trial court bifurcated the damages hearing between the Heymanns and Fischer and the Heymanns' indemnification claim against their agents.[5]  After an evidentiary hearing on the damages the Heymanns owed Fischer, the court entered the following relevant findings of fact:

### Seller's Failure to Mitigate On or Before February 18, 2006

\* \* \*

12.    On February 13, 2006, [Fischer] requested until February 28, 2006[,] to respond to the [February 10 demand].

13.    On February 15, 2006, [the Heymanns] responded by allowing [Fischer] until February 18, 2006[,] to respond to them and indicate whether [Fischer] would agree to fix the electrical problems identified in the inspection report.

14.    [Fischer] did not respond to [the Heymanns] at all after February 15, 2006.

15.    There was uncontroverted expert testimony that twenty-four (24) to forty-eight (48) hours is a reasonable time period to provide a seller to agree to fix this type of problem.  The [Heymanns] gave [Fischer] more than a reasonable amount of time to agree to fix the identified electrical problems.  [Fischer] offered no testimony, expert or otherwise, indicating

---

[4]  Judge Brown dissented from the majority's holding and stated that "there is no valid reason advanced why it was not objectively reasonable for the Heymanns to rely on the inspector and his report." Fischer I, 943 N.E.2d at 903 (Brown, J., dissenting).  Additionally, Judge Brown dissented on the grounds that, "by its terms, the Purchase Agreement expired at midnight on February 18, 2006," when Fischer failed to timely respond to the Heymanns' February 15 demand.  Id. at 904 (Brown, J., dissenting).

[5]  The trial court has stayed the Heymanns' indemnification claim pending resolution of this appeal.

that [the Heymanns'] request was either unreasonable or that it was impossible for [Fischer] to respond within the time period provided.

* * *

17.     Had [Fischer] remained in contact with [the Heymanns] and informed [them] that she would be making the changes prior to closing, [the Heymanns] would have proceeded to closing, and [Fischer] would not have been damaged or incurred any attorney fees or costs associated with the sale of [the Property] whatsoever.

18.     However, as determined by the Court of Appeals, the [Heymanns'] request to void the contract was not based on an objectively reasonable belief that the electrical problems constituted a "Major Defect" . . . .  As a result, the Court concluded that [the Heymanns] breached the Purchase Agreement as of . . . February 10, 2006.  This court, therefore, must determine [Fischer's] damages.

**Seller's Failure to Mitigate on February 16, 2007**

19.     There was uncontroverted expert testimony that [Fischer's] offer price for the [Property] was unreasonably high from at least the beginning of 2007 to early 2011.

20.     On February 16, 2007, Joe Johnson made an offer of [$240,000] or [$79.00] per square foot on the [Property].

21.     Johnson's offer was based on comparative listings and sales of other similar units around that time.  In contrast, [Fischer's] counteroffer of [$286,000] or [$95.00] per square foot was unreasonably high.  Two units sold in 2006 for [$96.00] per square foot and [$89.00] per square foot respectively.  No units sold in 2007.  One unit sold in 2008 for [$58.00] per square foot.  The Court notes that the [Heymanns] offered expert testimony on this issue, and [Fischer] in no way contradicted that testimony or otherwise offered any skilled or expert testimony of her own.

22.     Johnson's offer of [$240,000] was the largest offer Johnson made to [Fischer] after a series of negotiations lasting over two . . . weeks, and the largest offer [Fischer] ever received after [the Heymanns'] breach.  [Fischer] did not accept, nor counter this offer at a more reasonable price.

Appellant's App. at 19-22 (emphases added; original emphasis removed).

7

Thus, the trial court determined both that Fischer failed to mitigate her damages on or before February 18, 2006, and that she again failed to mitigate her damages a year later, on February 16, 2007. The court then entered judgment for Fischer in the amount of $93,972.18. This interlocutory appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review and Overview

Fischer appeals, and the Heymanns cross-appeal, the trial court's judgment that the Heymanns owe Fischer $93,972.18 in total damages. The trial court's judgment is based on findings of fact and conclusions thereon following an evidentiary hearing. Our two-tiered standard of review from such judgments is well established:

> we determine [first] whether the evidence supports the findings[] and[,] second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo.

Smith v. Smith, 938 N.E.2d 857, 860 (Ind. Ct. App. 2010) (emphases added; citations omitted). "[T]he reviewing court may affirm the judgment on any legal theory supported by the findings." Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998).

In general, "the measure of damages in a contract action is limited to those actually suffered . . . ." Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519 (Ind. 1993). However, as we have explained:

the non-breaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken. Indeed, the non-breaching party, as a general rule, must mitigate his damages, and the breaching party has the burden to prove that the non-breaching party has not used reasonable diligence to mitigate its damages. Where a party does mitigate its damages, the breaching party is entitled to set off the amount of damages mitigated.

Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007) (citations omitted). The duty to mitigate arises when the non-breaching party learns of the breach. See, e.g., Bedford Recycling, Inc. v. U.S. Granules Corp., 634 N.E.2d 1361, 1366 (Ind. Ct. App. 1994) (discussing efforts the alleged non-breaching party made to mitigate its damages "upon learning that [the other party] did not intend to complete the contract"), trans. denied; see also A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 391 (Mo. Ct. App. 1998) ("The duty to mitigate damages . . . does not arise until the promisee learns that the contract has been breached.").

As one leading authority has explained:

> As an almost inflexible proposition, a party who has been wronged by a breach of contract may not unreasonably sit idly by and allow damages to accumulate. Such damages are not proximately caused by the breach. . . .
>
> Since the purpose of the rule concerning damages is to put the injured party in as good a position as full performance of the contract would have, and that this be done at the least necessary cost to the defendant, the plaintiff never should be awarded damages for losses that could have been avoided by reasonable effort without risk of other substantial loss or injury. Likewise, gains that the injured party could have made by reasonable effort and without risk of substantial loss or injury by reason of opportunities that would not have been available to the nonbreaching party but for the other party's breach are deducted from the amount that the plaintiff could otherwise recover.

Corbin on Contracts § 57-11 (Matthew Bender & Co. 2012) (emphases added) ("Corbin on Contracts").

9

An act is the proximate cause of an injury when the injury "is a natural and probable consequence, which[,] in light of the circumstances, should have been foreseen or anticipated." Florio v. Tilley, 875 N.E.2d 253, 255 (Ind. Ct. App. 2007). "Liability may not be imposed on an original . . . actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission." Pope v. Hancock Cnty. Rural Elec. Membership Corp., 937 N.E.2d 1242, 1247-48 (Ind. Ct. App. 2010). Thus, if one is under a duty to mitigate damages, she must act promptly and efficiently to do so. See Corbin on Contracts § 57-11. The damaged party cannot sit idly by, incur additional damages, and hold the original actor liable for the additional damages.

Here, we will address the Heymanns' contention that, as established by the trial court's findings, Fischer had a duty to mitigate her damages on or before February 18, 2006, immediately following their breach, which would have resulted in $117 in total damages.[6] Because we agree with the Heymanns that Fischer could have mitigated her damages in February 2006, we need not consider the trial court's additional findings

[6] The Heymanns concede this figure as Fischer's cost to fix the electrical issues. See Appellees' Br. at 11 n.5. The Heymanns also suggest that they owe Fischer the $5,000 in earnest money, but we do not agree. First, the paragraph describing the earnest money in the purchase agreement was not a liquidated damages clause. A liquidated damages clause "applies to a specific sum of money that has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by one party for a breach of the agreement by the other . . . ." Time Warner Entm't Co. v. Whiteman, 802 N.E.2d 886, 893 (Ind. 2004). According to the purchase agreement: "If this offer is accepted and Buyer fails or refuses to close the transaction, without legal cause, the earnest money shall be retained by Seller for damages the Seller has or will incur, and Seller retains all rights to seek other legal and equitable remedies." Appellant's Addendum to Brief at 16. That provision describes the earnest money as a pool of money to be applied the Seller's actual damages, not as a specific sum of money stipulated by the parties as the amount of damages.

Second, the trial court expressly found that, had Fischer mitigated her damages by February 18, 2006, the parties "would have proceeded to closing, and [Fischer] would not have been damaged . . . ." Appellant's App. at 20. Had the parties closed, the earnest money would have been factored into the closing statement.

10

concerning Fischer's subsequent failure to mitigate in February 2007 or Fischer's contention that she was unable to mitigate her damages until November 2011.[7] We also consider Fischer's argument that her award of attorney's fees and costs should not be limited by the date by which she could have mitigated her damages.

**Issue One:  Fischer's Duty to Mitigate
On or Before February 18, 2006**

On cross-appeal, the Heymanns contend that the trial court's findings demonstrate that Fischer did not use reasonable diligence to mitigate her damages between February 11, 2006, when she learned of their breach, and February 18, 2006.  We agree. Paragraphs 12 through 17 of the court's order, located under the trial court's heading, "Seller's Failure to Mitigate On or Before February 18, 2006," state as follows:

12.     On February 13, 2006, [Fischer] requested until February 28, 2006[,] to respond to the [February 10 demand].

13.     On February 15, 2006, [the Heymanns] responded by allowing [Fischer] until February 18, 2006[,] to respond to them and indicate whether [Fischer] would agree to fix the electrical problems identified in the inspection report.

14.     [Fischer] did not respond to [the Heymanns] at all after February 15, 2006.

15.     There was uncontroverted expert testimony that twenty-four (24) to forty-eight (48) hours is a reasonable time period to provide a seller to agree to fix this type of problem.  The [Heymanns] gave [Fischer] more than a reasonable amount of time to agree to fix the identified electrical problems.  [Fischer] offered no testimony, expert or otherwise, indicating that [the Heymanns'] request was either unreasonable or that it was impossible for [Fischer] to respond within the time period provided.

\* \* \*

---

[7] In light of her proposed date of mitigation, Fischer asks that we "remand with instructions to award damages in the amount of $147,333.89, plus $139,075.54 consequential damages," along with another $22,103.04 for fees and costs.  Appellant's Br. at 16.

11

17. Had [Fischer] remained in contact with [the Heymanns] and informed [them] that she would be making the changes prior to closing, [the Heymanns] would have proceeded to closing, and [Fischer] would not have been damaged or incurred any attorney fees or costs associated with the sale of [the Property] whatsoever.

Appellant's App. at 19-20 (emphases added).

The trial court's findings are supported by the record. First, Fischer testified that she was aware as early as February 11 of the Heymanns' February 10 demand that she agree to make the electrical repairs. See Transcript at 58-59. Paragraph 14 is supported by the testimony of one of the Heymanns' agents, who stated that the Heymanns did not receive "any kind of response" from Fischer to the February 15 demand. Transcript at 122. Paragraph 15, in which the trial court found that the Heymanns gave Fischer "more than a reasonable amount of time to fix the identified electrical problems," is supported by the testimony of one of the Heymanns' expert witnesses. See Appellant's App. at 20. That witness testified that forty-eight hours to respond to a request based on an inspection report is "typical[]" and allowing eight days is "out of the norm." Transcript at 140. And in paragraph 17, the court found that, "[h]ad [Fischer] remained in contact with [the Heymanns, they] would have proceeded to closing[] and [Fischer] would not have been damaged . . . ." Appellant's App. at 20. That finding is supported by the facts that the transaction was to be a cash transaction, the repairs in question were insignificant, and Mr. Heymann testified they would have closed on the Property had Fischer timely responded to their February 15 demand for repairs. Trial Transcript at 33.

Thus, Fischer acted unreasonably when she "did not respond to [the Heymanns] at all after February 15, 2006," despite the fact that the Heymanns "gave [Fischer] more

12

than a reasonable amount of time" to do so. Appellant's App. at 20. And, had Fischer remained in contact with the Heymanns and informed them that she would be making the repairs prior to closing, the transaction would have proceeded to closing and Fischer "would not have been damaged or incurred any attorney fees or costs associated with the sale of [the Property] whatsoever." Id.

Still, after finding facts that demonstrate Fischer could have mitigated but failed to mitigate her damages in February 2006, the court went on to consider Fischer's subsequent failed transaction with Johnson in February 2007, some twelve months later, which was the basis for the court's damage award to Fischer. These additional findings were not only unnecessary but were incompatible with the initial findings that, with a little effort, Fischer could have mitigated her damages entirely in February 2006. Because the judgment is contrary to the court's initial findings, the judgment is clearly erroneous and must be reversed.

On appeal, Fischer challenges numerous findings[8] of the trial court on the ground that Fischer I and the law of the case doctrine barred the court from considering her response to the Heymanns' demands during the February 10 to 18 time period.[9] But

---

[8] Among her arguments, Fischer disputes the trial court's finding in paragraph 14 of its order that "[Fischer] did not respond to [the Heymanns] at all after February 15, 2006." Appellant's App. at 20. Specifically, Fischer asserts that her agent told the Heymanns' agent that Fischer was going to fix the problems and that Fischer did not consider them "a big issue." See Trial Transcript at 63. But whatever oral communications may or may not have occurred between the parties' agents, the purchase agreement unambiguously required any addenda to be in writing, and the evidence is undisputed that Fischer never responded to the Heymanns in writing after February 15, 2006.

[9] In her brief and a post-oral argument supplemental citation of authority, Fischer also asserts that Fischer I prohibits consideration of the February 10-18 timeframe under the doctrine of issue preclusion. But issue preclusion only applies to a "subsequent lawsuit," not a subsequent appeal in the same lawsuit. See Collins v. State, 873 N.E.2d 149, 158 (Ind. Ct. App. 2007), trans. denied. And, in any event, as discussed below the issues in this appeal were not decided in Fischer I nor could they have been since no

13

questions not conclusively decided in a prior appeal do not become the law of the case. Riggs v. Burell, 619 N.E.2d 562, 564 (Ind. 1993). In Fischer I, we held only that the Heymanns' February 10 demand that Fischer fix identified electrical problems was not based on an objectively reasonable belief that those problems were major defects under the parties' purchase agreement. 943 N.E.2d at 901. We expressly declined to consider the effect, if any, of Fischer's response to the Heymanns' demands, stating that "it is unnecessary to address the trial court's findings and judgment regarding Fischer's response to the Heymanns' repair request." Id. at 903. The holding in Fischer I did not address the issue of damages following the breach. The only issue decided in Fischer I was that a breach occurred when, on February 10, 2006, the Heymanns demanded that Fischer make minor repairs as a condition for the sale. Thus, Fischer's reliance on the law of the case doctrine is misplaced.

We agree with Fischer that she did not have a contractual obligation under the purchase agreement to respond to the Heymanns' demand. In Indiana, an anticipatory breach of contract excuses the other party from further performance. Page Two, Inc. v. P.C. Mgmt., Inc., 517 N.E.2d 103, 106 n.2 (Ind. Ct. App. 1987) (citing Indiana Life Endowment Co. v. Carnithan, 62 Ind. App. 567, 109 N.E. 851 (1915)). And, as a general rule, courts may not require a party acting pursuant to a contract to be "reasonable," "fair," or show "good faith" cooperation. See First Fed. Sav. Bank of Ind. v. Key Mkts., Inc., 559 N.E.2d 600, 604 (Ind. 1990). But Fischer's contractual obligation under the

---

facts relevant to Fischer's damages had yet been considered by the trial court or this court. See Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1048 (Ind. Ct. App. 2007) (noting that issue preclusion applies "where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in the subsequent suit between the same parties").

purchase agreement is not the question presented here. The question in this appeal is whether, by not responding to the Heymanns' demands for minor repairs, Fischer suffered more damages than she would have otherwise. In other words, entirely apart from the purchase agreement, as a matter of law it was incumbent on Fischer that she act promptly, efficiently, and with reasonable diligence to mitigate her damages once she learned of the Heymanns' breach. See Four Seasons, 870 N.E.2d at 507 ("reasonable diligence"); see also Corbin on Contracts § 57-11 ("reasonable effort")

Fischer further contends the Heymanns did not breach the purchase agreement until February 19, 2006, when they tendered the mutual release to her. But the record is clear that the Heymanns' February 10 demand was an anticipatory breach of the purchase agreement.[10] As this court has explained:

> The demanding of the other party a performance to which the [first] party has no right under the contract constitutes . . . an anticipatory breach.
>
> If one party to a contract, either willfully or by mistake demands of the other a performance to which he has no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an anticipatory breach has been committed. Such a repudiation is conditional in character, but the condition is a performance to which the repudiator has no right . . . . Where two contracting parties differ as to the interpretation of a contract or as to its legal effects, an offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach. In order to constitute such a breach, <u>the offer must be accompanied by a clear</u>

---

[10] Fischer additionally argues that the Heymanns "had already taken action to terminate the contract on February 17 [by making an offer on a second condominium, which] infers they had no intention of closing" on the Property. Fischer's Reply Br. at 4. But this argument is contrary to the evidence supporting the trial court's findings. Again, Mr. Heymann testified that he had instructed their agent not to deliver either the second offer or the mutual release until February 19 and only in the event that Fischer did not respond to the Heymanns' demand by February 18. See Trial Transcript at 33; see also Fischer I, 943 N.E.2d at 899. To be effective, a written offer must be made, executed, and delivered. There is no evidence that the offer on the second condominium was delivered until after February 18.

15

> manifestation of intention not to perform in accordance with any other interpretation. . . .

Eden United, Inc. v. Short, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991) (quoting A. Corbin, Corbin on Contracts § 973 at 961-62 (One Vol. ed. 1952)) (emphasis added), trans. denied.

As we stated in Fischer I, on February 10 the Heymanns submitted to Fischer a "Buyer's Inspection Response" in which they demanded that Fischer agree to make minor repairs as a condition for closing the transaction, contrary to the purchase agreement. 943 N.E.2d at 901-03. In doing so, as the trial court expressly found on remand, the Heymanns "indicated they would accept the [Property] if [Fischer] agreed to fix the electrical power to the outlets." Appellant's App. at 20. That is, the Heymanns made a demand of Fischer to make minor repairs, which they had no right to demand under the contract, and they made clear that they would not close on the transaction unless Fischer agreed to make the repairs. As such, their repudiation of the contract was positive, absolute, and unconditional, and it constituted an anticipatory breach. See Ralph E. Koressel Premier Elec., Inc. v. Forster, 838 N.E.2d 1037, 1045 (Ind. Ct. App. 2005). And the natural and probable consequence of the Heymanns' breach was that Fischer would incur costs to make minor repairs that the contract did not require her to assume. Thus, the law of anticipatory breach supports the trial court's recognition of February 10, 2006, as the date the agreement was breached. See Mitchell, 695 N.E.2d at 923. Fischer's argument that the breach did not occur until February 19 is incorrect.[11]

---

[11] Moreover, Fischer's contention that her duty to mitigate did not arise until the Heymanns tendered the mutual release on February 19 would allow her to avoid her obligation to use reasonable

16

In sum, the conclusion that Fischer failed to act with reasonable diligence to mitigate her damages by February 18, 2006, is supported by the trial court's findings and the evidence that supports those findings. The Heymanns breached the contract on February 10, 2006; Fischer testified that she knew of the Heymanns' breach on February 11, 2006; and the trial court found, based on the evidence, that Fischer had a full week, which was "more than a reasonable amount of time," to mitigate her damages on or before February 18, 2006. Appellant's App. at 20. And, as we explained when we ruled in Fischer's favor in Fischer I, the Heymanns' breach was a minor breach. But, instead of acting promptly and efficiently to address that minor breach, Fischer allowed a trivial repair issue to scuttle her transaction with the Heymanns. As a result, the Property sat on the market for nearly six more years, from February of 2006 until November of 2011. A small effort by Fischer would have placed her in "as good a position as full performance of the contract would have." Again, "the plaintiff never should be awarded damages for losses that could have been avoided by reasonable effort without risk of other substantial loss or injury." Corbin on Contracts § 57-11.

The common law and common sense are aligned on these facts. The Heymanns' breach of the contract proximately caused Fischer $117 in damages, and Fischer could have limited her damages accordingly if she had agreed to make a de minimis expenditure by February 18, 2006, to save the $315,000 transaction. See Corbin on Contracts § 57-11. Any further damages that Fischer incurred were proximately caused by her own failure to mitigate, not by the Heymanns' breach. See id. Hence, we reverse

---

diligence to mitigate her damages once she had learned of the Heymanns' breach on February 11. See, e.g., Bedford Recycling, Inc., 634 N.E.2d at 1366.

the trial court's conclusion that Fischer did not fail to mitigate her damages until February 16, 2007, and, pursuant to the trial court's initial findings, we hold that Fischer's duty to mitigate arose on February 11, 2006, when Fischer first learned of the Heymanns' breach, and that she had ample time to mitigate her damages by a reasonable effort, without risk of other substantial loss or injury, on or before February 18, 2006.

### Issue Two: Attorney's Fees

Fischer also asserts that the trial court's limitation of her award for attorney's fees and court costs in accordance with her failure to mitigate her damages is contrary to law because she would have incurred all of her fees and costs regardless of her failure to mitigate.[12] In particular, Fischer argues that, even if she had mitigated her damages, "the [Heymanns] denied that they breached the Purchase Agreement and litigation still would have ensued." Appellant's Br. at 14-15.

As we have explained:

Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney fees. Thus, although parties to litigation typically pay their own attorney fees, they may certainly agree by contract to do otherwise. When reviewing an award or denial of attorney fees, we note that the trial court is empowered to exercise its sound discretion, and any successful challenge to its determination must demonstrate an abuse thereof. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.

Delgado v. Boyles, 922 N.E.2d 1267, 1270 (Ind. Ct. App. 2010) (citations omitted), trans. denied. Here, the trial court awarded Fischer attorney's fees and court costs pursuant to the following provision of the purchase agreement: "Any party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought

---

[12] The trial court awarded Fischer $3,862.50 for attorney's fees and costs. On appeal, Fischer asserts that she is entitled to an award of at least $22,103.04.

18

under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party." Appellant's App. at 33.

We have considered such contract language before. In Madison Area Educational Special Services Unit v. Daniels by Daniels, 678 N.E.2d 427, 431 (Ind. Ct. App. 1997), trans. denied, we explained:

> In cases where plaintiffs enjoy only limited success, the plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in the litigation, thereby achieving some of the benefit the plaintiff sought in bringing the action. The degree of success is relevant to the amount of a fee, not to eligibility for a fee award.

(Emphasis added; citations omitted.)

We cannot say that the trial court abused its discretion when it limited Fischer's award for attorney's fees and costs in accordance with her failure to mitigate her damages. Because Fischer is the prevailing party based on this court's holding in Fischer I, she was eligible for an award of fees and costs pursuant to the purchase agreement. However, the contract language does not entitle her to a certain amount of fees and costs. See id. Rather, it was within the trial court's discretion to limit the amount of Fischer's award based on her "degree of success," and Fischer's degree of success was severely limited by her own failure to promptly act with reasonable diligence to mitigate her damages. See id. Thus, as the prevailing party and in light of the trial court's rationale, Fischer is entitled to attorney's fees but only in an amount commensurate with her "degree of success," which is $117. See id.

Accordingly, we affirm the trial court's rationale for limiting Fischer's attorney's fees and costs, but we reverse the amount entered based on that rationale. That is, we vacate the trial court's award for Fischer's attorney's fees, and we remand for the court to enter an award for reasonable attorney's fees commensurate with Fischer's recovery on the merits and court costs.

**Conclusion**

In sum, the trial court's findings do not support the $93,972.18 damage award. The evidence supports the trial court's findings that, after the Heymanns had breached the purchase agreement, Fischer could have easily mitigated her damages by indicating her agreement to make minor electrical repairs. The expense for those repairs caused by the breach was only $117. Instead, after having learned of the breach, Fischer failed to mitigate her damages, and since filing suit in 2006 she has sought to expand her small claim into a large money judgment. Whatever additional damages Fischer may have incurred through 2007 or 2011 were caused by her own failure to mitigate in 2006. Thus, on the facts of this case, Fischer is not entitled to the $286,409.43 in damages that she claims on appeal. We reverse and remand with instructions that the trial court enter a damage award for Fischer of $117, plus attorney's fees commensurate with her recovery, and costs.

Reversed and remanded with instructions.

FRIEDLANDER, J., concurs.

BRADFORD, J., dissents with separate opinion.

20

# IN THE
# COURT OF APPEALS OF INDIANA

GAYLE FISCHER, )
        )
    Appellant, )
        )
       vs. )     No. 49A02-1204-PL-340
        )
MICHAEL & NOEL HEYMANN, )
        )
    Appellees. )

**BRADFORD, Judge, dissenting.**

Because I do not believe the majority opinion is an appropriate application of the mitigation of damages doctrine, I respectfully dissent. I would reject the Heymanns' argument that Fischer failed to mitigate her damage on February 18, 2006, by not responding to the Heymanns' inspection response, affirm the trial court's holding that Fischer failed to mitigate her damages on February 16, 2007, by not accepting Johnson's offer to purchase the home for $240,000.00, and affirm the court's judgment for Fischer in the amount of $93,972.18.

### I. Fischer's Duty to Mitigate on February 18, 2006

Although I agree that, on February 18, 2006, Fischer had a duty to mitigate her damages resulting from the Heymanns' anticipatory breach, I do not believe this required

her to surrender to the very demand which generated that breach. "In Indiana, an anticipatory breach of a contract excuses the [non-breaching] party from further performance, permits [him] to treat the contract as terminated, and allows [him] to immediately sue for damages." *Page Two, Inc. v. P.C. Mgmt., Inc.*, 517 N.E.2d 103, 107 (Ind. Ct. App. 1987) (citing *Ind. Life Endowment Co. v. Carithan* (1915), 62 Ind. App. 567, 109 N.E. 851, *trans. denied*). The non-breaching party, however, may also "elect to stand upon his contract and perform, or offer to perform, all the conditions thereof required of him, and then, when the day of performance arrives, proceed to enforce his contract." *Carnithan*, 62 Ind. App. 567, 109 N.E. at 854. The majority opinion would take away the former option and compel the latter, contrary to longstanding Indiana law.

The majority opinion emphasizes that Fischer's contractual obligations are not at issue in this case. Slip op. 14-15. But to require that Fischer proceed to closing, the terms of the purchase agreement must be given effect, and the purchase agreement incorporates any terms subsequently agreed to in the Buyer's Inspection Response. Had Fischer assented to the Inspection Response, she would have been obligated to make the designated minor repairs, but such actions would have been in performance of the purchase agreement, not in mitigation of damages. Absent her assent, the purchase agreement did not obligate Fischer to repair minor defects in the home, *Fischer v. Heymann*, 943 N.E.2d 896, 901 (Ind. Ct. App. 2011), *trans. denied*, and courts will not require a party acting pursuant to a contract to be "reasonable." *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990).

In a departure from the typical notion of mitigating damages,[13] the majority opinion requires the non-breaching party to take actions with and advantageous to the breaching party which, but for that adversary's breach, she was under no obligation to take. I believe this application of the doctrine is contrary to law and, in the present context, licenses buyers to demand minor repairs with impunity, rendering moot the "major defect" provisions found in countless real estate contracts.

## II. Fischer's Duty to Mitigate on February 16, 2007

In light of my belief that Fischer did not fail to mitigate her damages on February 18, 2006, I would reach the issue of whether she failed to do so on February 16, 2007. The trial court held:

> 30. Through the exercise of reasonable diligence, [Fischer] could have mitigated her damages on February 16, 2007, by accepting Johnson's offer of Two Hundred Forty Thousand Dollars ($240,000.00).

Appellant's App. p. 23. This conclusion is supported by the trial court's findings that "Johnson's offer was based on comparative listings and sales of other similar units around that time" (*i.e.*, that the offer was reasonable) and, had Fischer accepted Johnson's offer, "the Johnson sale would have proceeded to closing[.]" Appellant's App. p. 21.

Fischer argues that the trial court's finding that Johnson's offer was reasonable is clearly erroneous. Specifically, Fischer claims the evidence shows that $240,000.00, or

---

[13] *See, e.g.*, *Hampton v. Morgan*, 654 N.E.2d 8, 10 (Ind. Ct. App. 1995) (suggesting damages from lost real estate sale can be mitigated by finding a replacement buyer); *Sandor Dev. Co. v. Reitmeyer*, 498 N.E.2d 1020, 1023 (Ind. Ct. App. 1986) (requiring landlord to make reasonable efforts to re-let a rental property following tenant's abandonment); *Salem Cmty. Sch. Corp. v. Richman*, 406 N.E.2d 269, 275 (Ind. Ct. App. 1980) (requiring non-breaching party to an employment contract to make a reasonable attempt to find work of a similar nature).

$79.00 per square foot, was below the "fair market value" of $89.00 per square foot for comparable units at the time. Appellant's Br. p. 9. I would disagree. As the Heymanns contend, the trial court made no finding regarding the home's fair market value, and the evidence does not necessarily reflect $89.00 as the appropriate figure. The evidence shows that, in 2006, two units sold for $96.00 and $89.00 per square foot, respectively; in 2007, no units sold; and in 2008, one unit sold for $58.00 per square foot. Additionally, Johnson's realtor, Carol Ayres, testified that a reasonable price in February of 2007 would have been "well under" $110 per square foot, Tr. p. 133, and the Heymanns' expert witness, Real Estate Broker Michael Fox, testified that $75.00 per square foot would have been "a reasonable offer to work with." Tr. p. 111. Fischer's claim is merely invitation to reweigh the evidence, which we will not do. *Smith v. Smith*, 938, N.E.2d 857, 860 (Ind. Ct. App. 2010).

Fischer also challenges the trial court's finding that, had she accepted Johnson's $240,000.00 offer, "the Johnson sale would have proceeded to closing." Appellant's App. p. 23. Fischer claims that this finding is clearly erroneous because it relies on pure speculation. Realtor Ayers, however, testified that Johnson was "willing and able" to close on the home at $240,000.00, and it was within the trial court's discretion to credit this testimony. *Gates v. Houston*, 897 N.E.2d 532, 536 (Ind. Ct. App. 2008). Moreover, had Fischer accepted the offer, Johnson would have been contractually bound to close on the home whether he ultimately did so or not. Fischer's claim is therefore without merit.

Because I believe that the evidence supports the trial court's findings and that these findings support its judgment, I would affirm the trial court's holding that Fischer

24

failed to mitigate her damages on February 16, 2007.  Accordingly, I would also affirm its judgment for Fischer in the amount of $93,972.18, representing $75,000.00 in damages, $15,109.68 in carrying costs, and $3862.50 in attorney's fees, all calculated as of the date Fischer failed to mitigate.