ATTORNEY FOR APPELLANT
Gary M. Selig
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
J. David Hollingsworth
Brent R. Borg
Steven M. Lutz
Fishers, Indiana

# In the
# Indiana Supreme Court

**FILED**

Jul 17 2014, 10:45 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1309-PL-620

GAYLE FISCHER,

*Appellant/Cross-Appellee*
*(Plaintiff),*

v.

MICHAEL and NOEL HEYMANN,

*Appellees/Cross-Appellants*
*(Defendants).*

Appeal from the Marion Superior Court, No. 49D04-0605-PL-19166
The Honorable Cynthia J. Ayers, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1204-PL-340

**July 17, 2014**

**Rush, Justice.**

This is the second appeal in protracted litigation over the breach of a real-estate sales contract. The first appeal established that Buyers breached the contract when they unreasonably demanded that Seller fix a minor electrical problem as a condition of purchase. In this second appeal, we granted transfer to consider whether the trial court acted within its discretion in calculating Seller's damages. Both parties appealed the trial court's findings regarding Seller's efforts to mitigate her damages. Seller argues that her efforts were reasonable and justify a full award. Buyers argue Seller failed to mitigate her damages in two ways: 1) by failing to respond to their demand for electrical repairs and

thus preserve the contract, and 2) by failing to accept a substitute offer to purchase the property after the agreement fell through. The trial court disagreed with Buyers' first argument but agreed with the second, and reduced Seller's damages accordingly. We hold the trial court was within its discretion to reach this conclusion, and therefore affirm the award of damages and attorney fees.

**Facts and Procedural History**

On February 4, 2006, Defendants Michael and Noel Heymann agreed to buy a condominium from Plaintiff Gayle Fischer for $315,000. Both parties signed a purchase agreement ("Agreement"), and the Heymanns paid $5,000 in earnest money. The Agreement authorized the Heymanns to terminate if Fischer refused to fix any "major defect" discovered upon inspection, but did not permit them to terminate if Fischer refused to perform "routine maintenance" or make "minor repair[s]." On February 10, 2006, the Heymanns demanded Fischer fix an electrical problem after an inspection report revealed electricity was not flowing to three power outlets. The Heymanns thought this was a "major defect" under the Agreement and conditioned their purchase on Fischer's timely response. Fischer failed to timely respond to their demand—even though she eventually fixed the problem for $117 on February 20—and the Heymanns tendered a mutual release. Fischer refused to sign the release and later sued for specific performance, or damages in the alternative, on May 9, 2006—two days before the original date of closing.

The trial court rejected Fischer's claim after the initial bench trial on the merits. The court found the Heymanns reasonably believed the electrical problem was severe, which justified their termination of the Agreement. But a divided panel of the Court of Appeals disagreed. The panel held that the Heymanns' demand itself breached the Agreement because the demand stemmed from an objectively unreasonable belief that the electrical problem was a "major defect." Fischer v. Heymann, 943 N.E.2d 896, 902–03 (Ind. Ct. App. 2011), trans. denied ("Fischer I"). The Court of Appeals thus reversed and remanded for the trial court to determine damages.[1] Id. at 903.

On remand, Fischer sought $306,616.73 in total damages, attorney fees, and court costs. Broken down, her damages request accounted for (1) the difference between the Heymanns'

---

[1] The Court of Appeals also ordered the trial court to "proceed with . . . the Heymanns' third-party indemnity claim against their agent." Fischer I, 943 N.E.2d at 903. That claim has been stayed, pending the outcome of this appeal.

purchase price of $315,000 and the 2011 sale price of $180,000; (2) $12,333.89 in closing costs; (3) $139,075.54 for the cost of maintaining the condo from 2006, when the Heymann deal fell through, until 2011 when she sold the property; (4) $11,222.50 in attorney fees; and (5) $8,984.80 in court costs. As the litigation continued on Fischer's second appeal, she argued those fees and costs have increased to $12,268.24 and $9,834.80, respectively.

The trial court entered its findings and conclusions after hearing extensive testimony. It concluded Fischer failed to mitigate her damages because she could have accepted an offer to sell the condo in 2007 for $240,000, instead of waiting to sell it in 2011 for only $180,000. Had she sold in 2007, she could have avoided all carrying costs and maintenance expenses she incurred between 2007 and 2011. As a result, the trial court concluded she was only entitled to $93,972.18—the difference between the original $315,000 selling price and the $240,000 offer, plus all carrying costs, expenses, and attorney fees that accrued from the moment of breach until Fischer rejected the $240,000 offer.

Fischer brought this interlocutory appeal, arguing she reasonably mitigated her damages and the trial court erred in calculating damages. The Heymanns cross-appealed, arguing Fischer could have avoided all damages except the $117 repair bill if she had responded to their demand to fix the electrical problem, thus preserving the Agreement. A divided panel of the Court of Appeals agreed with the Heymanns and awarded only $117 in damages. Fischer v. Heymann, 994 N.E.2d 1151, 1160–62 (Ind. Ct. App. 2013) ("Fischer II"). Judge Bradford dissented. He concluded that requiring Fischer to respond to the Heymanns to mitigate damages undermined a non-breaching party's right to immediately terminate the contract upon breach. Id. at 1164 (Bradford, J., dissenting). We granted transfer, which vacated the Court of Appeals' decision. Ind. Appellate Rule 58(A). Further facts will be provided as needed.

**Standard of Review**

On appeal, both parties focus on whether Fischer reasonably mitigated her damages. Fischer argues she reasonably declined the $240,000 purchase offer in 2007, and the Heymanns argue she unreasonably failed to save the Agreement by yielding to their repair demand. A party's reasonableness in mitigating damages is a question for the trier of fact, e.g., Frieburg Farm Equip., Inc. v. Van Dale, Inc., 978 F.2d 395, 403 (7th Cir. 1992); AES Tech. Sys., Inc. v. Coherent

3

Radiation, 583 F.2d 933, 942 (7th Cir. 1978), much like the exercise of reasonable care in negligence cases, e.g., Schloot v. Guinevere Real Estate Corp., 697 N.E.2d 1273, 1276 (Ind. Ct. App. 1988). Similarly, "the computation of damages is a matter within the sound discretion of the trial court." Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc., 814 N.E.2d 649, 658 (Ind. Ct. App. 2004). And because the trial court entered findings of fact and conclusions of law on those issues, we review only for clear error—that is, "whether the evidence supports the findings and whether the findings support the judgment." Id. (citing Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997)). Under the clear error standard, we will reverse the trial court's findings on any of these issues "only when the record contains no facts to support them either directly or by inference." Id.

### Discussion and Decision

Neither party disputes that Fischer had a duty to exercise reasonable diligence to mitigate her damages once the Heymanns breached the Agreement. See Lindenborg v. M & L Builders & Brokers, Inc., 158 Ind. App. 311, 324, 302 N.E.2d 816, 824 (1973). In view of Fischer I, this duty began on February 10, 2006, when the Heymanns demanded that Fischer fix a minor electrical problem as a condition of their purchase. See Fischer I, 943 N.E.2d at 902–03. After the deal fell through in 2006, Fischer attempted to mitigate her damages by selling the condo. But in the ensuing months, the housing market entered one of its worst downturns in recent memory. She received many offers, ranging as high as $240,000 to as low as $150,000. Eventually, in November 2011, over five years after the Heymanns breached the Agreement, Fischer sold the condo to a third party for $180,000. Here, both parties take issue with the trial court's damage award. The Heymanns argue, and the Court of Appeals held, that Fischer could have mitigated nearly all of her damages had she responded to the Heymanns' demand to fix the electrical problem. Fischer, conversely, argues she is entitled to the full $306,616.73 sum she requested before the trial court, plus fees and costs incurred after the damages hearing, because her refusal to sell the condo for $240,000 in 2007 was reasonable. But because neither party has shown clear error, we affirm the trial court's findings and conclusions.

## I. Fischer's Duty to Mitigate Damages.

Fischer had a right to damages for the "loss actually suffered as a result of the breach" once the Heymanns breached the Agreement, but not "to be placed in a better position than [she] would have been if the contract had not been broken." Roche Diagnostics Operations, Inc. v. Marsh

4

Supermarkets, LLC, 987 N.E.2d 72, 89 (Ind. Ct. App. 2013) (citations omitted), trans. denied. She also had a duty to mitigate her damages. Hawa v. Moore, 947 N.E.2d 421, 427 (Ind. Ct. App. 2011). "[T]he duty to mitigate damages is a common law duty independent of the contract terms" that requires "a non-breaching party [to] make a reasonable effort to act in such a manner as to decrease the damages caused by the breach." Geller v. Kinney, 980 N.E.2d 390, 399 (Ind. Ct. App. 2012); Salem Cmty. Sch. Corp. v. Richman, 406 N.E.2d 269, 275 (Ind. Ct. App. 1980). Still, "the burden of proving that the non-breaching party has failed to use reasonable diligence to mitigate damages" lies with the party in breach—here, the Heymanns. Hawa, 947 N.E.2d at 427; see also Willis v. Westerfield, 839 N.E.2d 1179, 1187 (Ind. 2006). And since assessing Fischer's diligence is a question of fact, we defer to the trial court's discretion and reverse only if there are no facts to support its conclusion either directly or by inference. Berkel & Co. Contractors, Inc., 814 N.E.2d at 658 (citing Yanoff, 688 N.E.2d at 1262).

**A. The Record Does Not Compel a Finding That Fischer Unreasonably Rejected the Heymanns' Demand.**

The Heymanns argue the trial court should have found that Fischer's only reasonable option to mitigate her damages was to respond to the Heymanns' demand. The trial court found that "[t]he [Heymanns] gave [Fischer] more than a reasonable amount of time to agree to fix the identified electrical problems," and "had [Fischer] remained in contact with [the Heymanns] and informed [them] that she would be making changes prior to closing, [the Heymanns] would have proceeded to closing, and [Fischer] would not have been damaged." The Heymanns argue these findings compel the conclusion that Fischer should have mitigated her damages by responding to their demand.

But the Heymanns overlook that the trial court qualified its findings about Fischer's delayed response. Immediately after it stated these findings, the trial court referenced Fischer I: "However, as determined by the Court of Appeals, [the Heymanns] . . . breached the Purchase Agreement" because their request to void the contract was not based on "an objectively reasonable belief" concerning the magnitude of the electrical problem. Thus, the trial court relied on Fischer I to avoid finding that Fischer needed to yield to the very demand that put the Heymanns in breach to mitigate her damages. We hold the trial court acted within its discretion when it considered the implications of the Heymanns' demand in light of Fischer I's holding—namely that the demand was a breach, and Fischer acted reasonably by not surrendering to the breach.

5

Fischer, like all non-breaching parties, had three options for recourse after the Heymanns repudiated the contract. City of Indianapolis v. Twin Lakes Enters., Inc., 568 N.E.2d 1073, 1080 (Ind. Ct. App. 1991); see also Scott-Reitz Ltd. v. Rein Warsaw Assocs., 658 N.E.2d 98, 103–04 (Ind. Ct. App. 1995); Indiana Life Endowment Co. v. Carnithan, 62 Ind. App. 567, 577, 109 N.E. 851, 854–55 (1915). First, she could "treat the contract as rescinded and recover in *quantum meruit* as far as [she had] performed." Twin Lakes, 568 N.E.2d at 1080. Second, she could "keep the contract alive for the benefit of [all] parties, remaining at all times ready, willing, and able to perform [her] part of the contract; then, at the time fixed for performance, . . . sue and recover according to the terms of the contract." Id. Or third, she could "treat the breach or repudiation as putting an end to the contract for all purposes of performance and sue at once to recover the damages due from the wrongful refusal to carry out the contract according to its terms." Id. Regardless of which option she chose, she had an obligation to reasonably "decrease the damages caused by the breach." See Richman, 406 N.E.2d at 275. "In rare instances the appropriate course [for mitigating damages] may be to complete performance instead of stopping," Restatement (Second) of Contracts, § 350 cmt. g (1981)—but in every case, "[t]he over-arching requirement is merely one of reasonableness." 11 Joseph M. Perillo, Corbin on Contracts § 57.11 (Rev. ed. 2005).

Here, there was evidence that Fischer acted reasonably by continuing to perform under the Agreement (option two), but without yielding to the precise terms of the Heymanns' breach—and so the trial court was not required to find otherwise. She did not immediately terminate the Agreement but remained "ready, willing, and able" to sell the condo to the Heymanns. Twin Lakes, 568 N.E.2d at 1080. And she did not bring suit until two days before the original date of closing. Fischer even repaired the electrical problem by having an electrician push the reset button on three outlets and change a light bulb—albeit a few days later than the Heymanns had demanded. None of her actions strayed from the terms freely negotiated by the parties.

Under these circumstances, we agree with Judge Bradford that Fischer did not need to "surrender to the very demand which generated [the] breach" to mitigate her damages. Fischer II, 994 N.E.2d at 1164 (Bradford, J., dissenting). Just as breaching parties may not take advantage of their breach to relieve them of their contractual duties, Rogier v. Am. Testing & Eng'g Corp., 734 N.E.2d 606, 620 (Ind. Ct. App. 2000), reh'g denied, trans. denied, neither may they take advantage of their breach to require non-breaching parties to perform beyond their contractual duties. See Nat'l Adver. Co. v. Wilson Auto Parts, Inc., 569 N.E.2d 997, 1001 (Ind. Ct. App. 1991) ("A party

who suffers from a breach of contract is entitled to recover the benefit of his bargain."). And just as non-breaching parties may not place themselves in a better position because of the breach, Roche Diagnostics Operations, Inc., 987 N.E.2d at 89, neither may breaching parties.

Holding otherwise would require sellers like Fischer to choose between surrendering to the terms of a breach or forfeiting damages whenever a buyer breaches an agreement by conditioning purchase on strict compliance with an unreasonable demand. This predicament would let buyers demand minor repairs with impunity and undermine sellers' ability to enforce the "major defects" clause of countless real-estate contracts. To the contrary, if the contract terms permit, sellers may refuse to replace the bathroom mirror, produce the warranty for household appliances, or—as in Fischer's case—timely repair an electrical problem by pushing the reset button on three outlets and replacing a light bulb.

Thus, while continued performance may have been necessary for Fischer to mitigate her damages, Restatement (Second) of Contracts, § 350 cmt. g, the evidence does not compel the finding that she had to surrender to the terms of the Heymanns' breach to do so. Rather, the trial court relied on the Court of Appeals' holding in Fischer I that the Heymanns breached by making an unreasonable demand, which did not impose upon Fischer a duty to respond. 943 N.E.2d at 903. Fischer did not deviate from her contractual duties under the Agreement and remained "ready, willing, and able to perform," Twin Lakes, 568 N.E.2d at 1080, under the original contract terms— just not under the additional terms the Heymanns demanded. We therefore affirm the trial court's refusal to find that Fischer's only reasonable option to mitigate her damages was to respond to the Heymanns' demand.

**B. The Trial Court Did Not Err in Finding That Fischer Should Have Mitigated Her Damages by Selling the Condo for $240,000.**

The trial court did, however, conclude Fischer fell short of exercising reasonable diligence in mitigating her damages when she listed the condo at an "unreasonably high [price] from at least the beginning of 2007 to early 2011," and rejected a third-party offer to purchase the condo for $240,000 in February 2007 by making an "unreasonably high" counter-offer of $286,000. Again, a party's reasonableness in mitigating damages is a question of fact. Van Dale, Inc., 978 F.2d at 403. As long as the trial court does not "appl[y] the wrong legal standard," Berkel & Co. Contractors, Inc., 814 N.E.2d at 658, it has discretion to determine whether parties have reasonably mitigated

their damages in calculating a final damage award, and we will not disturb the final award if the evidence supports it, Atterholt v. Robinson, 872 N.E.2d 633, 645 (Ind. Ct. App. 2007).

Here, though the parties disputed the evidence, the trial court acted within its discretion in finding that Fischer's asking price was unreasonably high from 2007 to 2011. By the time Fischer finally sold the condo in November 2011, it had languished on the market for eight years. Two real-estate agents testified they had never seen a property on the market for that length of time, and Fischer's own agent admitted she had never before listed a property for eight years. Multiple witnesses also testified that the listing price was unreasonably high, and inconsistent with the condo's 2011 appraisal value. Admittedly, it was difficult for Fischer to anticipate how far the value of her condo would fall in an extremely depressed housing market, and several witnesses acknowledged the difficult economic climate. But weighing Fischer's conduct in light of those factors was the trial court's prerogative. We only determine whether the record supports the findings, "either directly or by inference," Berkel & Co. Contractors, Inc., 814 N.E.2d at 658. Here, it does.

The record also supports the trial court's finding that Fischer could have sold the condo for $240,000 in 2007. On February 13, 2007, a third party, Joe Johnson, offered to purchase the condo for $240,000—the highest offer Fischer ever received after the Agreement with the Heymanns fell through. Fischer responded on February 16, 2007, by making a counter-offer of $286,000, which Johnson rejected. The trial court heard testimony that Fischer "overstated" the asking price by "[a] substantial amount," and made an unreasonable counter-offer, particularly for a unit in "an original non-updated condition." Fischer argues Johnson's ability to actually close on the offer was speculative, but this is an invitation to reweigh the evidence, which the standard of review forbids.

We affirm the trial court's conclusion that Fischer may receive only $75,000 in compensatory damages—the difference between the Heymann deal ($315,000) and the Johnson offer ($240,000). Showalter, Inc. v. Smith, 629 N.E.2d 272, 275 (Ind. Ct. App. 1994), trans. denied, abrogated on other grounds. We also affirm its conclusion that Fischer is entitled to only $15,109.68 in carrying costs and maintenance fees she incurred as consequential damages from the time the Heymanns breached the Agreement until the date Fischer made her unreasonable counter-offer to Johnson. See Indianapolis City Mkt. Corp. v. MAV, Inc., 915 N.E.2d 1013, 1024 (Ind. Ct. App. 2009). The trial court therefore acted within its discretion when it awarded $90,109.68 for damages resulting from the Heymanns' breach.

**II. Attorney Fees.**

The trial court found Fischer was entitled to reasonable attorney fees based on a provision in the Agreement granting "reasonable attorney fees" to the "prevailing party" in any litigation involving the Agreement. But the trial court only awarded fees and costs incurred prior to February 16, 2007 in the amount of $3,862.50. Fischer argues this was an abuse of discretion because even if she had sold the condo to Johnson, the litigation would not have ceased in 2007, and attorney fees would have continued to accrue well beyond the amount the trial court awarded. Fischer thus seeks a total of $12,268.24 in attorney fees and $9,834.80 in court costs.

We will enforce a contract allowing for recovery of attorney fees, but "[t]he amount recoverable for an award of attorney fees is left to the sound discretion of the trial court." Dempsey v. Carter, 797 N.E.2d 268, 275 (Ind. Ct. App. 2003). "When determining the amount of a reasonable attorney fee, 'the court may consider such factors as the hourly rate, *the result achieved* . . . and the difficulty of the issues.'" Heiligenstein v. Matney, 691 N.E.2d 1297, 1304 (Ind. Ct. App. 1998) (emphasis added) (quoting Dougherty v. Leavell, 582 N.E.2d 442, 443 (Ind. Ct. App. 1991)). Here the trial court considered the ultimate "result achieved" by Fischer's attorney, and limited the award for fees based on Fischer's failure to mitigate. This was within the trial court's discretion, and we thus affirm the trial court's award of $3,862.50 in attorney fees and costs.

### Conclusion

The record supports the trial court's findings and conclusions on Fischer's duty to mitigate. The trial court acted within its discretion by finding that Fischer could have mitigated her damages by selling the condo in 2007 instead of waiting until 2011, and in refusing to find that her duty to mitigate required yielding to the Heymanns' breach. The trial court also acted within its broad discretion in determining reasonable attorney fees and costs based on the results that Fischer achieved in this litigation. We therefore affirm the trial court's award of $93,972.18.

Dickson, C.J., and David and Massa, JJ., concur.
Rucker, J., concurs in result.

9