

**FILED**
Sep 22 2015, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kerry M. Hultquist
The Hultquist Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Clark
Jeremy J. Grogg
Katherine R. Gould
Burt, Blee, Dixon, Sutton &
Bloom, LLP
Fort Wayne, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Connie Scott-Larosa,<br>*Appellant,*<br><br>v.<br><br>Frank Lewis,<br>*Appellee* | September 22, 2015<br><br>Court of Appeals Case No.<br>02A05-1410-SC-486<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Jerry L. Ummel,<br>Magistrate<br><br>Trial Court Cause No.<br>02D03-1403-SC-4585 |

**Bailey, Judge.**

# Case Summary

Constance Scott-LaRosa ("Scott-LaRosa") filed a small-claims suit against Frank Lewis ("Lewis") for breach of contract after Lewis moved out of a leased residence the two shared. The trial court entered judgment in favor of Scott-LaRosa and assessed damages against Lewis. Scott-LaRosa filed a motion to correct error, challenging the judgment and seeking an award of additional damages. The trial court denied the motion.

Scott-LaRosa now appeals. We affirm.

# Issues

Scott-LaRosa identifies several issues for our review. We restate these as:

 I. Whether the trial court clearly erred when it concluded that Scott-LaRosa failed to mitigate her damages; and

 II. Whether the trial court clearly erred when it did not grant Scott-LaRosa's request for payment of her attorney fees by Lewis.

We also address *sua sponte* a matter related to the power of our trial courts to resolve disputes related to the endorsement and delivery of negotiable instruments.

# Facts and Procedural History

We take our statement of facts in part from a statement of the evidence entered pursuant to Appellate Rule 31.[1]

Scott-LaRosa and Lewis were involved in a romantic relationship in the summer of 2012, and decided to live together in an apartment at the West Wind Apartment Complex in Fort Wayne. Prior to moving in together, Scott-LaRosa and Lewis "agreed to move in together and split expenses." App'x at 43.

On July 21, the couple signed a lease for a one-bedroom apartment. The lease provided for a monthly rent payment of $465.00. The lease required that Scott-LaRosa and Lewis would be jointly and severally liable to West Wind. The lease's term was to run from August 1, 2012 to July 31, 2013. The lease also included an early termination provision:

> Owner [West Wind] and Resident [Scott-LaRosa and Lewis] agree that this lease may be terminated by either Owner or Resident at the end of the original term or at the end of any renewal term… Resident may terminate this lease prior to the expiration of the above listed lease term by providing one month's written notice to Owner and upon paying to Owner, before vacating the apartment, a termination fee equivalent to one month's rent plus rent to the date of the termination of this lease. Provided that Resident shall comply with such notice and payment, Owner and Resident mutually agree to cancel this

---

[1] Appellate Rule 31 provides, "[i]f no Transcript of all or part of the evidence is available, a party … may prepare a verified statement of the evidence from the best available sources," a motion for certification of which statement must then be filed with trial court. Ind. Appellate Rule 31(A). An opposing party may file a verified response, App. R. 31(B), and the trial court must certify a statement of the evidence with "any necessary modifications." App. R. 31(C). Once complete, the statement of the evidence becomes part of the Clerk's Record. *Id.*

lease, and Owner agrees to process any Security Deposit of Resident held by Owner for refund as if Resident had fulfilled the terms of the lease.

Ex. 1.

[8] Scott-LaRosa and Lewis lived together in the apartment from August until December. In December, Lewis moved out of the apartment. Lewis did not pay any share of the rent from December 2012 through the end of the lease term in July 2013. Scott-LaRosa remained through the end of the lease term, and continued to reside in the apartment beyond the end of the lease. Appellant's Br. at 4.

[9] On March 31, 2014, Scott-LaRosa, having by this time relocated to Cincinnati, Ohio, filed suit against Lewis, who had relocated to Oakmont, Pennsylvania. A trial was conducted on June 25, 2014.

[10] On July 1, 2014, the trial court entered judgment. In its order, the trial court found that the parties had entered into a one-year lease for the West Wind apartment and that Lewis vacated the premises in December 2012 and failed to pay rent from January through July 2013. The court stated further:

> 3.    An examination of the lease shows that the lease could be terminated by paying a one (1) month penalty.
>
> 4.    Under Indiana law the Plaintiff had a duty to mitigate any damages in the situation once she knew that Mr. Lewis had vacated the premises. The Court finds that Defendant is liable for one-half of rent for the month of January and

an additional full month's rent as the penalty that should have been paid to terminate the lease.

5. The Plaintiff failed to prove that the Defendant owes her any additional funds. From the evidence presented at trial, it would appear that the Plaintiff is entitled to the deposit. A check has been issued in the name of both parties but the parties cannot agree on how to negotiate the check. The Court cannot order either party to negotiate the check.

Judgment to the Plaintiff against the Defendant in the sum of $697.50. Costs to Defendant.

App'x at 6.

On July 31, 2014, Scott-LaRosa filed a motion to correct error. In the motion, Scott-LaRosa challenged the trial court's determination of damages, arguing that the trial court erred when it awarded her only 1 ½ months' rent rather than payment of Lewis's portion of the rent for January through July 2013. Scott-LaRosa also sought an order awarding attorney's fees under equitable and contract theories. The trial court denied the motion to correct error on September 15, 2014.

This appeal ensued.

# Discussion and Decision

# Standard of Review

[13] Scott-LaRosa appeals the trial court's denial of her motion to correct error, which in part sought additur vis-à-vis the trial court's original judgment of July 1, 2014, and in part sought payment of attorney's fees. We review a trial court's order on a motion to correct error for an abuse of discretion. *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). An abuse of discretion occurs when the judgment is contrary to the logic and effect of the facts and circumstances before the court, or when the court erred on a matter of law. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012). Decisions on requests for attorney's fees are also reviewed for an abuse of discretion. *Id.*

[14] Underlying the motion to correct error is the trial court's judgment in this case, which was presented as and conducted in the small-claims court. In small-claims actions, "[j]udgment shall be subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A).

> In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, the appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995). A judgment in favor of a party having the burden of proof

will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence. *Id.* This deferential standard of review is particularly important in small claims actions, where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A); *City of Dunkirk,* 657 N.E.2d at 116. We presume that the trial court correctly applied the law and give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Bonecutter v. Discover Bank,* 953 N.E.2d 1165, 1171 (Ind. Ct. App. 2011), *reh'g denied, trans. denied.* However, "this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind. 2006). "Similarly, where a small claims case turns *solely* on documentary evidence, we review de novo, just as we review summary judgment rulings and other 'paper records.'" *Id.* (emphasis added).

*Eagle Aircraft*, 983 N.E.2d at 657.

# Mitigation of Damages

Scott-LaRosa argues that Lewis was liable for the entirety of his share of the lease payments, and that trial court erred when it concluded otherwise. To the extent Scott-LaRosa's argument focuses on questions of contract law, we note that interpretation of a contract is a pure legal question, and we review a trial court's construction of contract provisions *de novo*. *Claire's Boutiques, Inc. v. Brownsburg Station Partners, LLC*, 997 N.E.2d 1093, 1097 (Ind. Ct. App. 2013).

[16] The trial court found that there were two agreements: one imposing joint and several liability to West Wind upon Scott-LaRosa and Lewis, and a second between Scott-LaRosa and Lewis. The agreement between Scott-LaRosa and Lewis contemplated "mov[ing] in together and sharing expenses," without "any meeting of the minds regarding additional specific terms of any oral agreement." App'x at 43.

[17] Scott-LaRosa argues that Lewis's failure to terminate his liability to West Wind mandates that he remain liable to Scott-LaRosa for the full amount of the West Wind lease. The judgment and award of damages to Scott-LaRosa amounts to a finding that Scott-LaRosa would have been eligible for contribution from Lewis and, because Lewis breached the agreement between the two of them, he was liable to her for breach of that agreement separate from any consideration of the West Wind lease's early termination provisions.

[18] However, Scott-LaRosa challenges the trial court's finding that she failed to mitigate damages. Based upon this finding, the trial court limited Scott-LaRosa's recovery on the agreement with Lewis to one-half of a month's rent and one full month of rent, the latter as the termination fee Scott-LaRosa would have had to pay to terminate the lease she signed with Lewis.

[19] Upon breach of a contract, the non-breaching party has "a right to damages for the loss actually suffered as a result of the breach," but not a right "to be placed in a better position than [she] would have been if the contract had not been broken." *Fischer v. Heymann*, 12 N.E.3d 867, 871 (Ind. 2014) (citations and

quotation marks omitted). A non-breaching party generally also has a duty to mitigate its damages. *Id.* The duty to mitigate damages is a common-law duty independent of the terms of the underlying contract, and it requires the non-breaching party to "make a reasonable effort to act in such a manner as to decrease the damages caused by the breach." *Id.* (citations and quotation marks omitted). Proving the failure to use reasonable diligence to mitigate damages is a burden placed upon the breaching party. *Id.* Whether the non-breaching party made reasonable efforts to mitigate damages occurred is a question left to the fact finder at trial. *Id.* at 870, 871.

[20] Scott-LaRosa raises several arguments in her challenge to the trial court's conclusion that she did not mitigate damages. First, she argues that for Lewis to avoid full liability to Scott-LaRosa for his portion of the rent on the West Wind lease, Lewis should have availed himself of the early termination provision of the West Wind lease. Because he did not, Scott-LaRosa insists, Lewis remained bound under the lease and thus was liable to Scott-LaRosa for half of each month's rent through July 2013. To the extent the trial court decided otherwise, Scott-LaRosa claims, the trial court erred by confusing liability under the West Wind lease to liability under the couple's separate agreement.

[21] Scott-LaRosa also argues that the trial court's finding that she should have taken action to mitigate her damages was in error, arguing that the trial court's conclusions that she could have terminated her lease, requested a less expensive

apartment, or found a roommate were speculative, impractical, or would have required her to breach the West Wind lease by seeking its termination.

[22] With respect to both of Scott-LaRosa's contentions concerning termination of the West Wind lease by either her or by Lewis, proper exercise of the termination clause by either her or Lewis would not have constituted breach of the lease. The termination clause expressly states, "Provided that Resident shall comply with such notice and payment, Owner and Resident mutually agree to cancel this lease." That is, so long as appropriate notice was provided, rent was current, and the termination fee was paid, the lease would not have been violated; indeed, the West Wind lease does not indicate that West Wind reserved any discretion to itself to decide *not* to terminate the lease if the contractual termination procedure was followed. To the extent Scott-LaRosa insists that Lewis could have terminated the West Wind lease, then, she is correct. But to the extent Scott-LaRosa insists—inconsistently with her contentions regarding Lewis's responsibilities—that the court penalized her for *not* violating the terms of the lease because she did not attempt to terminate the West Wind lease, she is incorrect.

[23] Thus, either Scott-LaRosa or Lewis could have sought to terminate the lease without breaching it. Lewis did not do so; but as the non-breaching party to her separate agreement with Lewis, Scott-LaRosa had a duty to attempt to mitigate the damages Lewis might owe her. There is no evidence Scott-LaRosa made any such efforts.

Scott-LaRosa objects that the trial court's examples for possible efforts at mitigation of damages were inappropriate, unlikely, or impossible for her to attempt. But the measure of mitigation is not the reasonableness of the trial court's proposed alternatives—it is whether the non-breaching party made reasonable efforts to mitigate damages. *See Fischer*, 12 N.E.3d at 871. Yet, again, there is nothing in the statement of evidence indicating that Scott-LaRosa undertook *any* efforts at mitigation. She simply remained in the apartment that she and Lewis shared through the end of the lease term.

The trial court found that Scott-LaRosa took no action to mitigate damages, though she had a separate duty to do so. Scott-LaRosa has not demonstrated how that finding was clearly erroneous. We accordingly leave the judgment undisturbed in this respect.

## Attorney's Fees

Finally, we turn to Scott-LaRosa's request for payment of attorney's fees.

"[T]here are two basic attorney fee schemes: the English rule ('loser pays') and the American rule ('every man for himself')." *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 658 (Ind. 2001). While in the United States the American rule is prevalent, "[c]ourts in varying American jurisdictions have sought a middle ground by using the inherent equitable powers to carve out exceptions to the American rule." *Id.* The Indiana General Assembly has provided that trial courts have discretion to award attorney's fees to a prevailing party when an opposing party (1) brought or defended the action on a frivolous,

unreasonable, or groundless basis; (2) continued to litigate after the claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith. I.C. § 34-52-1-1(b).

[28] Scott-LaRosa recognizes the limitations of the American Rule, but claims that her case falls into two exceptions that entitle her to collect attorney's fees. First, she argues that her case against Lewis is akin to a subrogation claim so that she is entitled to attorney's fees as provided in the West Wind lease. Second, Scott-LaRosa contends that she is entitled to attorney's fees under what has been termed the "third-party litigation exception." *Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1038 (Ind. Ct. App. 2005).

[29] As to her first argument, Scott-LaRosa makes a bald claim that her case is at bottom a subrogation claim. Yet Scott-LaRosa cites to no authority in support of that proposition, merely likening her position to that of an insurance company. We accordingly decline to entertain her contention in this regard. *See* App. R. 46(A)(8)(a).

[30] We turn to Scott-LaRosa's second contention under the third-party litigation exception. This doctrine provides that a prevailing party may be entitled to attorney's fees when:

> (1) the plaintiff became involved in litigation either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of

agreement; (2) the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; and (3) the attorneys fees were incurred in that third-party litigation.

*Masonic Temple*, 837 N.E.2d at 1038. Central to the inquiry under the third-party litigation exclusion is determining "whether the action for which the attorney fees are claimed is brought or defended by a third party, a party that is not part of the contract, agreement, or events that caused the original litigation to arise." *Id.* at 1038-39. This ensures that the American Rule on fees for prevailing parties in litigation is kept distinct from a doctrine intended to protect parties who are drawn into litigation due to the wrongful conduct of third parties. *Id.* at 1038.

[31] Scott-LaRosa concedes that her case does not fit within the second element because the litigation was not with a third party. Nevertheless, she argues that because she saved Lewis the cost of attorney's fees that would have been paid to West Wind in the event of a breach, she is entitled to have her attorney's fees paid. She does not identify how she is entitled to attorney's fees under the third-party litigation exception, other than to claim she saved Lewis the expense of litigation involving another party. This does not fall within the scope of the third-party litigation exception.

[32] We accordingly find no error in the trial court's denial of attorney's fees.

# Security Deposit

[33]    We address *sua sponte* an issue that remains outstanding in the trial court's order:  the question of negotiation of the check representing repayment of the security deposit.  The trial court concluded that the funds from the security deposit rightfully belonged to Scott-LaRosa, and Lewis does not dispute this on appeal.  However, the court observed that the parties could not agree on how to negotiate the instrument and found, "The Court cannot order either party to endorse the check."  App'x at 6.

[34]    Trial Rule 70 provides:

> If a judgment directs a party to execute a conveyance of land, or other property or *to deliver deeds or other documents or to perform any other specific act* and the party fails to comply within the time specified, *the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party*. On application of the party entitled to performance, the clerk shall issue a writ of attachment, writ of assistance, or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt and may award damages for disobedience of the order. If real or personal property is involved, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of both a judgment and of a conveyance executed in due form of law.

T.R. 70(A) (emphasis added).

[35] Given the trial court's decision that Scott-LaRosa was entitled to the funds from the security deposit and the apparent requirement for negotiation that both Scott-LaRosa and Lewis endorse the instrument, the trial court would likely have been within its authority to order endorsement and delivery in a manner suitable to ensure that Scott-LaRosa received the funds. This might have included appointing the Clerk of the Court to serve as an endorser or transferee.

[36] In disputes over the negotiation of checks such as the one presented here, a timely order from a trial court is particularly important given the Uniform Commercial Code's provision that "[a] bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six (6) months after its date." I.C. § 26-1-4-404. While the comments to this U.C.C. provision indicate that "a bank will normally not pay such a check without consulting the depositor," payment of such a check is not a foregone conclusion, and a delay in endorsement and negotiation imposes risk of loss upon Scott-LaRosa. It is all the more troublesome when an Indiana trial court may have contributed unnecessarily to such delay.

[37] Neither party presented as error the trial court's finding of its inability to address the question of endorsement and negotiation of the check for the security deposit. We have no evidence in the record to indicate whether or how the security deposit check may have been negotiated; we write here only to remind counsel and our trial courts of the power of the courts to address impasses such as the one identified by the judgment in this case.

# Conclusion

[38] The trial court's finding of liability as to Lewis, its finding that Scott-LaRosa failed to mitigate her damages, and its conclusion that Scott-LaRosa was not entitled to attorney's fees were not clearly erroneous. We take the opportunity in this case to remind trial courts of their powers to address certain impasses with respect to the endorsement, delivery, and negotiation of checks and other forms of commercial paper.

[39] Affirmed.

Baker, J., and Mathias, J., concur.