

IN THE

# Court of Appeals of Indiana

**John W. Hughes,**

*Appellant-Respondent*

v.

**Heather K. McKenzie,**

*Appellee-Petitioner*



FILED

Sep 10 2024, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 10, 2024

Court of Appeals Case No.
23A-DN-1816

Appeal from the Marion Superior Court

The Honorable Danielle P. Gaughan, Judge

Trial Court Cause No.
49D15-2110-DN-8576

**Opinion by Judge Foley**
Judges Vaidik and Weissmann concur.

**Foley, Judge.**

[1] John W. Hughes ("Husband") appeals from the denial of his motion to correct error, which challenged aspects of the decree dissolving his marriage to Heather K. McKenzie ("Wife"). Husband raises four issues, which we restate as:

> I. Whether the trial court abused its discretion in excluding approximately $130,000.00 in capital gains tax liability from the marital pot;
>
> II. Whether the trial court erred in its allocation of Wife's Chase savings account;
>
> III. Whether the trial court erred in failing to credit Husband for $16,000.00 in post-hearing, court-ordered payments to Wife; and
>
> IV. Whether the trial court abused its discretion in ordering Husband to pay $20,000.00 of Wife's attorney's fees.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] Husband and Wife married in April 1994, after cohabitating since 1989. They have two adult children. Throughout most of the marriage, Husband worked as a self-employed general contractor and historic restorer, while Wife focused on child-rearing, homemaking, and assisting with Husband's business affairs. Husband and Wife used to live in Texas. Around 2012, they moved to Indiana. For a couple of years, Husband regularly returned to Texas to finish projects.

[4] Husband is the sole owner of John Hughes Ceramic Tile Contractor, Inc. ("Hughes Tile"), which he started in Texas in 1985. In 2004, Husband and a friend formed Blue Pinto, LLC ("Blue Pinto"), a Texas real estate investment company in which Husband owns a 50% interest. In January 2020, Husband opened a checking account for Blue Pinto at a Texas bank ("the Blue Pinto account"). Husband did not inform Wife of the Blue Pinto account.

[5] In 2020 and 2021, Hughes Tile and Blue Pinto sold a substantial number of assets. Based on Husband's stake in these businesses, the transactions resulted in about $130,000.00 of liability for capital gains taxes. As to Blue Pinto, the entity sold certain assets for $125,673.47 on November 7, 2020. Blue Pinto sold the rest of its assets for $734,171.57 on March 12, 2021. Shortly after each transaction, the funds were deposited into the Blue Pinto account. Husband did not inform Wife of these transactions. On September 24, 2021, Hughes Tile sold a piece of real estate for $174,926.07. Wife was aware of the Hughes Tile transaction. When Wife inquired about using proceeds from the sale to pay off certain marital debts, Husband informed Wife that he wanted a divorce.

[6] Husband filed a petition for dissolution of marriage on October 6, 2021. During the discovery phase, Wife served Husband with interrogatories related to assets and liabilities. When Husband responded in April 2022, he did not produce bank records for Blue Pinto. Wife's counsel later conducted non-party discovery, which revealed the Blue Pinto account. At that point, Wife learned that the account had a balance of $371,315.64 when Husband filed his petition.

Following a preliminary hearing in June 2022, the trial court ordered Husband to pay Wife $4,000.00 per month as temporary support during the pendency of the dissolution matter. On August 23, 2022, Wife requested special findings under Trial Rule 52(A). The trial court then conducted evidentiary hearings on August 24, November 10, December 9, 2022, and February 9, 2023. Thereafter, the trial court issued an interim order for Husband to keep making the $4,000.00 monthly payments until the entry of the dissolution decree.

The trial court issued its findings of fact, conclusions of law, and final dissolution decree on June 12, 2023. Therein, the trial court terminated Husband's obligation to make monthly payments to Wife as of the date of the decree. The court also identified disparate economic circumstances, noting that Wife had been borrowing money from an uncle to pay her attorney. At one point, the trial court found that Husband had violated court orders, including making intentional expenditures from a bank account in violation of a mutual asset restraining order. The trial court found Husband in contempt. The trial court ultimately ordered Husband to pay $20,000.00 of Wife's attorney's fees "as a sanction for his contempt and because of delay that Husband caused during the litigation." Appellant's App. Vol. II p. 68. As to the marital estate, the trial court summarized the marital assets and liabilities in Exhibit A, which was attached to the dissolution decree. *See id.* at 70. That exhibit did not list or refer to approximately $130,000.00 in personal capital gains taxes that resulted from the Blue Pinto and Hughes Tiles transactions. *See id.* As to these capital gains taxes, the trial court at one point stated that "[t]he 2021 tax year was not

complete on the date of filing, so the amount of taxes was speculative." *Id.* at 59. However, at another point, the trial court stated that Husband did not take advantage of lawful strategies to minimize those taxes and he "alone should be responsible for the consequences of his decisions and actions." *Id.* at 46. The trial court's Exhibit B included a section stating that Husband's and Wife's 2021 State and Federal Income Taxes" should be "segregated if part of marital estate[.]" *Id.* at 71. The trial court did not assign a value to the parties' respective tax liabilities. *See id.* However, the trial court assigned a value to all other assets and liabilities and determined that the marital estate was valued at $1,049,046.18. The court decided that each party was entitled to 50% of that value. *See id.* at 71–72. To give effect to that division, the court distributed the listed property and ordered Husband to make an equalization payment. *See id.*

[9] Husband moved to correct error, challenging the court's failure to account for $16,000.00 in monthly payments made to Wife after the final hearing but before the decree. Wife agreed that Husband should be credited for these payments but argued that the credits could be dealt with in enforcing the decree. The trial court denied the motion to correct error. Husband now appeals.

## Discussion and Decision

[10] This appeal arises following the denial of Husband's motion to correct error. We generally review a ruling on a motion to correct error for an abuse of discretion. *See Bruder v. Seneca Mortg. Servs.,* LLC, 188 N.E.3d 469, 471 (Ind. 2022). However, to the extent the ruling turned on a question of law, our

review is de novo. *Id.* Here, the motion to correct error involved the court's division of marital property. We apply the standard of review appropriate to each underlying issue as discussed below.

## I. Exclusion of Tax Liabilities

[11]  Husband contends that the trial court erred by excluding the $130,000.00 in capital gains taxes from the marital pot and making him solely responsible for that tax liability, which he claims resulted in an unequal division of the marital estate.

[12]  We review the division of marital property for an abuse of the trial court's discretion. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). We reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). In conducting our review, we will not set aside the trial court's factual findings unless they are clearly erroneous, meaning there is no evidence to support the findings. Ind. Trial Rule 52(A); *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014). We review legal conclusions de novo. *Fobar*, 771 N.E.2d at 59.

[13]  Indiana adheres to a "one pot" theory of marital property, which means that "all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts." *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (citing Ind. Code § 31-15-7-4(a)). "The requirement that all marital assets be placed in

the marital pot is meant to [e]nsure that the trial court first determines th[e] value [of the marital estate] before endeavoring to divide property." *Id.* (quoting *Montgomery v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009)). This approach "prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award." *Id.*

[14] Pursuant to Indiana Code section 31-15-7-4(b), the trial court must divide the marital estate in a "just and reasonable manner." In deciding how to divide the marital estate, "[t]he court shall presume that an equal division . . . is just and reasonable." I.C. § 31-15-7-5. However, a party may rebut this presumption by presenting evidence that an equal division would not be just and reasonable under the circumstances. *See id.* Regarding the division of the marital estate, the court "may decide to award a particular asset solely to one spouse as part of its just and reasonable property division[.]" *Falatovics*, 15 N.E.3d at 110. However, the court "must first include the asset in its consideration of the marital estate to be divided." *Id.* Indeed, under the "one pot" approach, "[t]he systematic exclusion of any marital asset from the marital pot is erroneous." *Id.*

[15] Indiana Code section 31-15-7-5 outlines several factors pertinent to a court's decision to deviate from the presumptive equal division of the estate, including:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

> (2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

[16]     Tax obligations arising from events during the marriage are typically considered marital liabilities. *See Crider v. Crider*, 26 N.E.3d 1045, 1049–50 (Ind. Ct. App. 2015) (placing tax liability in the marital pot when the liability stemmed from "underpayment of taxes during the marriage"); *cf. Moore v. Moore*, 695 N.E.2d 1004, 1009–10 (Ind. Ct. App. 1998) (determining that a tax refund issued after the filing date should have been placed in the marital pot because it represented the "return of taxes [that] were overpaid during the marriage"). Therefore, in *In re Marriage of Pulley*, we concluded that the trial court erred when its dissolution decree reflected that the court intended a 60/40 split, and yet, it ordered one

party to pay back taxes, which "amount[ed] to a substantial deviation from the attempted 60/40 split." 652 N.E.2d 528, 531 (Ind. Ct. App. 1995), *trans. denied*. We concluded that remand was warranted under the circumstances, noting that the court had "improperly excluded tax liabilities from the marital pot[.]" *Id.*

[17] Husband likens this case to *Pulley*. He directs us to portions of the dissolution decree indicating that the trial court was attempting a 50/50 split, and yet, the trial court ordered him solely responsible for the capital gains taxes. He argues that, as in *Pulley*, the court improperly excluded the tax liability from the marital estate. We agree. Here, it is undisputed that the Blue Pinto and Hughes Tile transactions resulted in approximately $130,000.00 of capital gains tax liability. The tax return including the calculation of the taxes and payment of the taxes were not yet due when Husband petitioned to dissolve the marriage in October 2021. However, the tax liability resulted from transactions that took place during the marriage. In the dissolution decree, the trial court determined that Husband should be solely responsible for the tax liability. Yet, based on the content of the decree, as supplemented by Exhibits A and B, the trial court did not assign a value to the tax liability and, thus, did not account for that tax liability in giving effect to its otherwise-equal division of the marital estate. This approach reflects that the court did not place the tax liability in the marital estate. *See, e.g.*, *Montgomery*, 910 N.E.2d at 238 ("The requirement that all marital assets be placed in the marital pot is meant to [e]nsure that the trial court first determines th[e] value [of the marital estate] before endeavoring to divide property."). Although the court may deviate from the presumptive equal

division, it must first place all property in the marital pot, decide on a valuation, and then distribute the marital property in a just and reasonable manner. *See id.* (emphasizing the importance of assigning a value to the entire marital estate, noting that, to the extent the trial court is inclined to distribute certain property to one of the spouses, "knowing the numerical split of the entire estate might alter the trial court's view of the appropriateness of its property division").

[18] We reverse the handling of the capital gains taxes and remand with instructions to the trial court to place this tax liability in the marital pot, assign a value to the liability, then make any findings or deviation from the original 50/50 division of the marital estate.

## II. Allocation of Wife's Chase Savings Account

[19] Husband asserts, and Wife agrees, that the trial court erred in its allocation of Wife's Chase savings account. At one point, the court found that this account had a value of $5,018.92 and awarded it to Wife. *See* Appellant's App. Vol. II pp. 66, 71. However, in its summary of the marital estate (Exhibit B to the final order), the trial court assigned $3,000.00 of the account's value to Husband while only $2,018.92 remained with Wife. *Id.* at 71. We remand this issue to the trial court with instructions to correct its order to reflect that the entire balance of $5,018.92 is assigned to Wife. The trial court should then review the overall division of marital property to ensure that the corrected decree is aligned with the court's intended division of the marital estate.

## III. Credit for Post-Hearing Payments

Husband contends the trial court erred by failing to credit him for $16,000.00 in court-ordered payments to Wife between March and June 2023. We agree.

On February 21, 2023—after the final evidentiary hearing on February 9, 2023, but before issuing the final decree—the trial court ordered Husband to continue making monthly payments of $4,000.00 to Wife "until a decree of dissolution is entered." *Id.* at 183. The trial court entered its final decree on June 12, 2023. That decree accounted for payments made through February 2023 but did not address the subsequent payments. *See id*. at 61, 65.

Wife does not dispute that Husband should be credited for these post-hearing payments. However, Wife suggests that, rather than modify the decree to account for those payments, Husband could be credited when the parties carry out other provisions of the dissolution decree. *See* Appellee's Br. p. 45. Given the parties' general agreement on this issue, we conclude that the court erred in failing to account for the $16,000.00 in interim payments. To ensure the proper documentation of those payments, we reverse this aspect of the decree and remand with instructions for the trial court to formally credit Husband $16,000.00 against his overall property distribution obligation to Wife.

## III. Award of Attorney's Fees

Husband challenges the decision to award Wife $20,000.00 in attorney's fees, which the court characterized as a sanction for Husband's discovery violations

and other misconduct. *See* Appellant's App. Vol. II p. 68–69. Husband argues the award is excessive and not limited to fees incurred due to his misconduct.

[24] Indiana Code section 31-15-10-1 allows a court in a dissolution proceeding to order a party to pay a reasonable amount for the other party's attorney's fees. In making such an award, the court should consider the parties' resources, their economic conditions, their ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. *Eads v. Eads*, 114 N.E.3d 868, 879 (Ind. Ct. App. 2018). Moreover, misconduct that directly results in additional litigation expenses may be taken into account. *Id.* We review the trial court's award of attorney's fees for an abuse of discretion. *Troyer v. Troyer*, 987 N.E.2d 1130, 1142 (Ind. Ct. App. 2013), *trans. denied*.

[25] Here, the trial court ordered Husband to pay $20,000.00 of Wife's attorney's fees. At one point, the court characterized the award of attorney's fees as a sanction for Husband's misconduct. However, other aspects of the decree indicated the award was also based on the parties' economic circumstances.

[26] As to Husband's misconduct, the court found that Wife's attorney fees were increased significantly by Husband's failure to disclose assets, violation of court orders, and delays in complying with deadlines. *See* Appellant's App. Vol. II p. 58. Specifically, the trial court found that Husband's "inadequate and incomplete" discovery responses necessitated additional discovery efforts by Wife, including non-party discovery in Texas. *Id.* The trial court also found

that Husband violated court orders, including withdrawing over $131,000.00 from an account in violation of a mutual asset restraining order. *Id.* at 53–55.

[27] Husband argues that the $20,000.00 award is excessive because it is not limited to fees incurred as a result of his misconduct. Appellant's Br. pp. 23–24. However, the fee award was not based solely on Husband's misconduct. Rather, it was also based on the parties' disparate economic circumstances, which is a proper consideration in awarding attorney's fees. *See In re Marriage of Bartley*, 712 N.E.2d 537, 546 (Ind. Ct. App. 1999) ("An award of attorney's fees is proper when one party is in a superior position to pay fees over the other party."). In a section titled "Attorney Fees," the trial court specifically found that "Wife does not have the means to pay her attorney fees." Appellant's App. Vol. II p. 57. The trial court further found that, while Husband had been controlling most of the marital assets during the proceedings, Wife "ha[d] been borrowing money from an uncle to make payments to her attorney[.]" *Id.* at 57–58, 61–62.

[28] Based on the unchallenged findings, we cannot say that awarding $20,000.00 in attorney's fees to Wife was clearly against the logic and effect of the facts and circumstances. We therefore affirm the award of attorney's fees to Wife.

## Conclusion

[29] We affirm the award of attorney's fees to Wife. However, we reverse and remand due to the exclusion of the capital gains tax liability from the marital estate and the erroneous assignment of a portion of Wife's Chase savings

account. On remand, we instruct the trial court to place the tax liability in the marital pot and assign a value to that liability. We also instruct the trial court to correct the error regarding the Chase savings account. In light of these issues, we direct the trial court to make additional findings or adjustments as necessary to reflect the intended division of the estate. On remand, the court should also formally credit Husband with $16,000.00 in post-hearing payments.

[30] Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Alexander N. Moseley
Julie C. Dixon
Dixon & Moseley, P.C.
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Lisa M. Johnson
Brownsburg, Indiana

Donna J. Bays
Bays Family Law
Zionsville, Indiana