## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 14 2016, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Matthew J. Elkin
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rachelle L. Purcell,

*Appellant-Petitioner,*

v.

Gary A. Purcell,

*Appellee-Respondent.*

October 14, 2016

Court of Appeals Case No.
34A02-1602-DR-253

Appeal from the Howard Circuit Court
The Honorable Lynn Murray, Judge

Cause No. 34C01-1005-DR-484

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner Rachelle Purcell ("Mother") and Appellee-Respondent Gary Purcell ("Father") were married in 1987 and have five children, including N.P., born on September 3, 1994. In May of 2010, Mother petitioned for dissolution of the marriage. For the academic year of 2012-13, N.P. attended

Ball State University for one semester and resided on-campus before transferring to Indiana University-Kokomo ("IUK"), where she resided off-campus. In February of 2013, the parties entered into a settlement agreement ("the Agreement"), drafted by Mother's counsel, in which they agreed, *inter alia*, that Father would pay $150 weekly child support and contribute $5000 per year to N.P.'s on-campus college expenses. The Agreement also provided that Father's child support obligation for N.P. would apply to her IUK attendance while she resided off-campus. Father contributed $5000 for the 2012-13 academic year.

[2] In December of 2014, Father filed a petition to emancipate N.P., who had turned twenty years old. In his petition, Father requested that his child support obligation related to N.P. be terminated. In March of 2015, Mother filed an independent action for fraud, alleging that Father had entered into a scheme or plan to avoid his educational obligations to N.P. and his child support obligations to his other three minor children. In November of 2015, the trial court issued its order, ruling that pursuant to the Agreement, Father's educational support obligation related to N.P. was satisfied by his weekly payments of $150, this same $150 payment satisfies his child support obligations related to his other three children, Mother's allegations of fraud on the trial court failed, and neither party was in contempt of court.

[3] Mother argues that the trial court erroneously denied her direct challenge to the Agreement, erroneously concluded that N.P.'s attendance at IUK is "off-campus" for purposes of the Agreement, and Father is estopped from arguing

that he was not obligated to pay $5000 per year in N.P.'s sophomore through senior years at IUK. Because we conclude that the trial court erred in concluding that Father's $5000 yearly educational support obligation to N.P. ceased when she transferred to IUK, we reverse and remand with instructions.

# Facts and Procedural History

[4] Mother and Father married in 1987 and their marriage produced five children, N.P., and four others. The oldest child is emancipated, N.P. was born on September 3, 1994, and the other three children are minors. On May 11, 2010, Mother filed a petition for dissolution. In the fall of 2012, N.P. matriculated at Ball State University in Muncie.

[5] On February 11, 2013, the trial court issued a decree of dissolution, which incorporated the court-approved Agreement, which was drafted by Mother's counsel and signed by both parties and their respective counsels. The Agreement provided, in part, as follows:

> **Section 2.1. Child Custody**. The parties shall exercise joint legal custody of all of their children. With respect to [the three youngest], the Father shall exercise primary custody of, and the children shall primarily reside with the [Father]. Due to the [Father's] non-traditional occupation work schedule, 48 hours on duty 48 hours off duty, the [Mother] shall have overnight parenting time of no less than 150 overnights per year, as [Mother] is exercising overnight parenting at all times that the [Father] is on duty at his occupation; and in addition and any and all time [sic] that the parties may agree….

With respect to [N.P.], [Mother] shall exercise primary physical custody.

....

**Section 2.2. Child Support.** The parties agree that the Father should pay to the Mother $150.00 retroactive to February 1, 2013 pursuant to the Worksheets attached.... Deviation of the child support amount is justified due to the agreement of the Father to pay college expenses for the child [N.P.] in the Mother's custody.

....

**Section 2.10. Post-Secondary Education Expenses.**

With respect to [N.P.], the parties agree that [Father] shall contribute the sum of $5,000.00 per academic year to [N.P.'s] **on campus college expenses** for a total of no more than eight (8) semesters retroactive to the Ball State U. Fall of 2012 semester. His child support obligation to [Mother] as set forth in this agreement shall apply to [N.P.'s] I.U.K. attendance while the child resides **off campus**....

However, upon [N.P.] reaching the age of 19, the Father's support obligation shall not terminate and the educational support obligation in the above paragraph shall apply for a total of 8 semesters aggregate. The parties agree that [N.P.] and [Mother] will obtain loans and/or financial aid to cover remaining IUK college expenses. The parties agree that [Father's] obligation for post-secondary education shall terminate upon [N.P.'s] failure to maintain a 2.0 cumulative GPA on a 4.0 scale.

With respect to [the younger children], the parties agree that it is premature to address the division of college expenses at this time. The parties agree to consult with each other concerning the division of post-secondary education expenses for each child as appropriate and if an agreement cannot be reached, either party may petition the Court for a ruling upon this issue.

Appellant's App. pp. 40-41, 44 (emphases in original).

[6] On May 7, 2013, Mother filed a release and satisfaction with the trial court indicating that Father's obligation relating to N.P.'s education had been satisfied in full for the academic year of 2012-13 when he made a payment of $5000. On December 23, 2014, Father petitioned the trial court to emancipate N.P. Father requested that his child support obligation related to N.P. be terminated because she was twenty years old. On January 26, 2016, Mother moved for a rule to show cause based on Father's failure to pay $10,000 allegedly owed for N.P.'s post-secondary education for the 2013-14 and 2014-15 school years.

[7] On March 23, 2015, Mother filed an independent action for fraud on the court and motions for relief from judgment, to construe the Agreement, and for a support order for the three minor children. In Mother's filing, she alleged that Father and/or his attorney undertook a fraudulent scheme to avoid his post-secondary education obligations to N.P. and his child support to the younger children by failing to file Worksheets with the trial court, claiming that his sole obligation to support N.P. was $150 per week, and refusing to pay $5000 per year for N.P.'s educational expenses. On July 30, 2015, the trial court held a hearing on Mother's motions.

[8] On November 16, 2015, the trial court issued its findings of fact, conclusions of law, and order. In its order, the trial court concluded that Mother had failed to establish that Father or his attorney had perpetrated a fraud on the court; that, pursuant to the Agreement, Father's obligation for N.P.'s post-secondary education expenses was satisfied by his weekly child-support payment of $150;

that the weekly child-support payment was intended to and does include support for the younger children; and that neither Father nor Mother was in contempt of court.

# Discussion and Decision

[9] Mother argues that the trial court abused its discretion in construing the Agreement attached to the dissolution decree, attendance at IUK is "on-campus" for purposes of the agreement, and Father is estopped from making any argument that he was not obligated to pay $5000 per year in N.P.'s sophomore through senior years at IUK. Father contends that because Mother has produced no evidence that Father committed fraud on the court, she cannot now challenge support provisions of the Agreement and that Mother has waived her argument that N.P.'s attendance at IUK is on-campus. We need only address Mother's contention that the trial court erred in construing the Agreement.

# Whether the Trial Court Erred
# in Interpreting the Agreement

[10] Mother argues that the Agreement obligates Father to pay $5000 per year for N.P.'s sophomore, junior, and senior years at IUK. Mother's argument on appeal is that because N.P. is taking classes on IUK's campus, she is therefore attending IUK "on campus." As such, the argument continues, Father is still obligated to pay $5000 per year pursuant to Section 2.10 of the Agreement.

[11]     As an initial matter, we conclude that Mother's arguments were fully preserved below. On January 26, 2015, Mother filed a motion for rule to show cause based on Father's alleged failure to pay the $5000 educational expense for two years. When mediation failed and Mother learned of Father's interpretation of the Agreement, she filed another motion on March 20, 2015. In this motion, Mother expressly requested that the trial court construe the Agreement. At the hearing on these motions, the trial court indicated, "it's a different interpretation between the two parties here but I'm going to have to decide." Tr. p. 56. In its subsequent order, the trial court interpreted the Agreement in Father's favor. To summarize, Mother objected to and responded to Father's interpretation of the Agreement at the earliest opportunity to do so after he made it an issue.

[12]     Mother now appeals, and it is our duty to review the contract *de novo* to determine whether it was properly interpreted by the trial court. *See Scott-LaRosa v. Lewis*, 44 N.E.3d 89, 94 (Ind. Ct. App. 2015) ("[I]nterpretation of a contract is a pure legal question, and we review a trial court's construction of contract provisions *de novo*."). As previously mentioned, with respect to child support and post-secondary education expenses for Mother and Father's four youngest children, the Agreement provided in relevant part:

> **Section 2.2. Child Support.** The parties agree that the Father should pay to the Mother $150.00 retroactive to February 1, 2013 pursuant to the Worksheets attached…. Deviation of the child support amount is justified due to the agreement of the

Father to pay college expenses for the child [N.P.] in the Mother's custody.[1]

….

### Section 2.10.  Post-Secondary Education Expenses.

With respect to [N.P.], the parties agree that [Father] shall contribute the sum of $5,000.00 per academic year to [N.P.'s] **on campus college expenses** for a total of no more than eight (8) semesters retroactive to the Ball State U. Fall of 2012 semester. His child support obligation to [Mother] as set forth in this agreement shall apply to [N.P.'s] I.U.K. attendance while the child resides **off campus**….

However, upon [N.P.] reaching the age of 19, the Father's support obligation shall not terminate and the educational support obligation in the above paragraph shall apply for a total of 8 semesters aggregate.

Appellant's App. pp. 41, 44 (emphases in original).

[13]    As noted by the trial court, while these provisions of the Agreement are not models of clarity, they are not ambiguous.  We part ways, however, with the trial court's reading of them.  The provisions clearly provide for two types of support—child support and post-secondary educational support.  Father's $150 weekly child support obligation applies to N.P. and the three minor children and is an expressed downward deviation due to his agreement to pay a portion of N.P.'s college expenses.  The Agreement then provides that Father will pay $5000 *per academic year* (for a maximum of eight semesters) toward N.P.'s post-

---

[1] This provision references more than one worksheet (due to the parties' split-custody arrangement), but only one was apparently attached to the Agreement.  The record establishes, however, that Father's total support obligation at the time would have been $293.01 per week based on the worksheets ($133.27 for the three children in his custody and $159.74 for N.P. in mother's custody).  Thus, the $150 per week was a clear deviation.

secondary education expenses. We cannot agree with the trial court's determination that Father's educational support obligation hinges, under the terms of the Agreement, on whether N.P. resides on- or off-campus. The only reference to where N.P. resides while attending college is made with respect to Father's support obligation—as opposed to his educational support obligation—and makes clear that Father's $150 weekly support obligation shall continue to apply even when N.P. is residing off-campus, presumably with Mother.[2] We conclude that the Agreement obligated Father to pay $5000 per year toward N.P.'s post-secondary educational expenses without regard to her residence.

## Conclusion

[14] Because we conclude that Mother preserved her argument regarding the construction of the Agreement and that the trial court erroneously concluded that Father's educational support obligation only applied when N.P. lived on-campus, we reverse and remand with instructions to order Father to satisfy his remaining post-educational support obligations to N.P.

[15] We reverse the judgment of the trial court and remand with instructions.

---

[2] The commentary to the Ind. Child Support Guideline 8 provides in relevant part: "The impact of an award of post-secondary educational expenses is substantial … and a reduction of the Basic Child Support Obligation attributable to the child under the age of nineteen years will be required when the child does not reside with either parent." In apparent recognition of this general rule, the Agreement provides that Father's $150 support obligation will remain unaffected by N.P.'s living off-campus while attending IUK.

Pyle, J., and Altice, J., concur.